CITIZENS INSURANCE COMPANY, APPELLANT, V. HERPOLSHEIMER IMPLEMENT COMPANY, APPELLEE.

PHENIX INSURANCE COMPANY, APPELLANT, V. HERPOLSHEIMER IMPLEMENT COMPANY, APPELLEE.

RELIANCE INSURANCE COMPANY, APPELLANT, V. HERPOLSHEIMER IMPLEMENT COMPANY, APPELLEE.

FILED APRIL 4, 1907. Nos. 14,984, 14,985, 14,986.

1. **Judgment: VACATION: EVIDENCE.** Evidence examined, and *held* sufficient to sustain a finding, made by the court in an application by petition to vacate certain judgments, that such judgments had not been procured by wilfully false testimony given by the judgment plaintiffs.

2. ———: ———: DILIGENCE. In an action to vacate a judgment on the ground that it was obtained by fraud, the plaintiff must allege and prove that he exercised due diligence at the former trial, and that his failure to secure a just decision was not attributable to his own fault or negligence. *Secord v. Powers*, 61 Neb. 615.

3. ———: ———: ———. Where a party applying by petition for a new trial, after the term at which the verdict or decision was rendered, fails to show that he could not have discovered the evidence before, by the exercise of reasonable diligence, the application is properly denied.

4. **Review: HARMLESS ERROR.** In an application for a vacation of certain judgments, under the provisions of section 602 of the code, several defenses were interposed; a demurrer to one of these defenses was overruled, but such ruling in nowise interfered with a full and complete hearing on the merits; the evidence adduced

would have necessitated a denial of the application, had the demurrer been sustained; the court denied the application. *Held*, That the error, if any, in overruling the demurrer was error without prejudice.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters* and *Hall, Woods & Pound,* for appellants.

*Field, Ricketts & Ricketts, contra.*

ALBERT, C.

These appeals are a continuation of the litigation involved in *Citizens Ins. Co. v. Herpolsheimer,* 77 Neb. 232. There a judgment against each of the insurance companies was affirmed. The opinion referred to will assist to an understanding of the questions involved at this time. The judgments reviewed in those proceedings were rendered by the district court on the 8th day of April, 1905. On the 12th of April, 1906, the insurance companies each filed a petition for a vacation of the respective judgments, and for new trials, under the provisions of section 602 of the code. The petitions charge that the judgments were procured by wilfully false testimony given on the trial of the three cases by the judgment plaintiffs, whom we shall hereafter refer to as the Herpolsheimers. It is also alleged in the petitions that the insurance companies had no knowledge of any witness by whom such testimony could be contradicted and shown to be false, until long after the term at which the judgments were rendered, and about two months before filing their petitions. The answers are voluminous, and it will suffice for present purposes to say that they put in issue the charge of perjury, and state a legal conclusion, to the effect that the delay of two months on the part of the insurance companies in filing their petitions after the discovery of the witness by whom they could show the alleged falsity of the testimony of the Herpolsheimers constitutes laches. The insurance

companies demurred to the so-called plea of laches, but their demurrers were overruled. They then filed replies, amounting in each case to a general denial. The issues in the three cases were tried at the same time, and submitted on the same evidence. The trial court found generally for the Herpolsheimers, and dismissed the petitions. The insurance companies prosecute separate appeals, which were submitted at the same time and on the same briefs, and may be disposed of in one opinion.

The testimony given by the Herpolsheimers at the original trial, and now relied upon by the insurance companies as a basis for the charge of perjury, was with respect to two items: (1) The number of buggies totally destroyed by fire; and (2) the extent of the damage to certain binding twine.

As to the first item, two of the Herpolsheimers at the original trial testified that 31 buggies were totally destroyed. Their testimony on that point shows that they arrived at that number by taking the whole number of buggies shown by their last inventory, taken some nine months before the fire, adding thereto such additions to their stock as were shown by subsequent invoices, deducting therefrom the number shown by their account of sales to have been sold subsequently to the taking of the invoice, and subtracting from the result the number of buggies which were only partially destroyed by the fire. On the trial of these applications, the insurance companies produced a witness, who had been employed by the Herpolsheimers in and about the building where the buggies were destroyed for a period of about four months preceding the fire, and who had continued in their employ for about four weeks thereafter. He testified that about three months previous to the fire he had counted the whole number of buggies in stock for the purpose of listing them for assessment, and that the whole number then on hand was 64; that he knew the number of buggies sold between that time and the date of the fire, the number added to the stock between those dates, and the number that were only

partially destroyed by fire. From this data he placed the total number of buggies totally destroyed at 25. He further testified that within two days after the fire he counted the iron running gears in the ruins of the building where the buggies had been kept, and found the remains of only 25 buggies that had been totally destroyed; that he assisted in removing a portion of the debris, and, while doing so, again recounted the running gears of such buggies as were totally destroyed, and found the number to be 25. The testimony of this witness, so far as it relates to the so-called inventory taken by him for the purpose of listing the property for assessment, is entitled to little weight. He took no inventory. He merely counted the buggies and made no book entry, and preserved no memorandum of the number on hand at that time; neither did he keep any record of new buggies bought and added to the stock, or of the sales made therefrom. He depended entirely on his memory. On the other hand the Herpolsheimers based their estimate on an inventory regularly taken and reduced to writing about nine months before the fire, and their invoices, sales books, and other written memoranda. As to the count made by this witness of the running gears of the buggies regarded as totally destroyed, there are certain facts and circumstances that tell against its credibility. In the first place, both the Herpolsheimers and the adjuster for the insurance companies, almost a week after the fire, found it impracticable to count the running gears, or to ascertain with certainty, by an examination of the debris, the number of buggies which had been totally destroyed by fire. In short, the Herpolsheimers, testifying to the result of their computation from certain data, placed the number of buggies totally destroyed at 31; the witness produced by the insurance companies on the hearing of these applications, basing his computations on entirely different data, placed the number at 25. It will hardly be claimed that this state of the record does not sustain a finding against the insurance companies on the charge of per-

jury with respect to the number of buggies totally destroyed.

As to the second item—the damage to the binding twine—that was a subject of expert testimony on the trial of the cases on their merits. The twine was not consumed by the fire, but was damaged by the water used to extinguish the fire. A considerable amount of testimony was adduced at that time to the effect that binding twine is of no value after it has been wet. Two of the Herpolsheimers testified to that effect, and that all of the twine got wet by the water used to extinguish the fire and was thereby rendered worthless. On the trial of these applications, the insurance companies produced a witness—the one who testified on their behalf with respect to the buggies—who testified, in effect, that a considerable portion of the twine had not been damaged, and it is conceded that after the judgment sought to be vacated by these proceedings the Herpolsheimers sold the twine in question for $308, or a trifle more than one-third of what they claimed was its value before the fire. So far as the testimony of this witness, to the effect that a portion of the twine was not damaged, is concerned, it will not be seriously claimed that it is so convincng that it necessitated a finding that the testimony of the Herpolsheimers was false, or that a finding contrary thereto is not supported by sufficient evidence. But counsel lay great stress on the fact that the twine was afterwards sold for a substantial sum, and seem to regard that fact as a demonstration of the falsity of the testimony of the Herpolsheimers. We think it falls far short of demonstrating anything of the kind. At the original trial, all the parties proceeded on the theory that the damage to the twine was a matter calling for the opinion of experts. They submitted the cases on that theory. There is nothing to indicate that the Herpolsheimers, or any of the witnesses for that matter, gave any other than their honest opinions. It does not even demonstrate that the Herpolsheimers were mistaken in their opinions, because the record does not inform us as to the amount of

the expenses incurred for storage, drayage, treatment, and the sale of the damaged twine. Neither is there anything in the record to show that the judgment of the man who bought the damaged twine was any better with respect to its value than that of the Herpolsheimers and other witnesses, who testified that at the time of the hearing on the merits it was of no value. It is not often that the charge of perjury rests upon a less substantial foundation than in this instance.

With the question of perjury eliminated from the case, the only question presented by the evidence is whether the insurance companies made such a showing as would entitle them to new trials on the ground of newly discovered evidence. The evidence shows that they, or their attorneys, first learned that the witness, who testified on the hearing of these applications with respect to the number of buggies destroyed and the damage to the binding twine, knew certain facts material to the case near the close of the trial of the cases on their merits, which lasted about a week. But the time they discovered this particular witness is immaterial. The question presented by an application of this kind is whether they used due diligence to ascertain the facts disclosed by his testimony. The record shows that the second day after the fire the adjuster of the insurance companies went to the city where the loss occurred and, in company with two of the Herpolsheimers, examined the ruins. Within four days he made a second visit to the city, and again, in company with the Herpolsheimers, visited the ruins, and looked over such portions of the stock as could be examined at that time. On that occasion they submitted to him an inventory of the property destroyed and damaged by the fire. This inventory shows 32 buggies totally destroyed. (It was afterwards discovered that there was a mistake of one buggy, and at the trial the Herpolsheimers only claimed a total loss of 31 buggies.) On his second visit there was some controversy between him and the Herpolsheimers with respect to the number of buggies totally

destroyed. They allowed him to examine their books, their invoices and their documents upon which they based their estimates. He had the same opportunity to count the running gears of the buggies in the ruins of the building that they had. No obstacle was thrown in his way. When their petitions were filed in the district court, the insurance companies were again appraised of the amount of damages they claimed for the buggies totally destroyed. With the knowledge of that fact and with ample opportunity at all times to make inquiries, or to have the ruins examined with a view to discovering the number of buggies actually destroyed, the companies went to trial on this branch of the case, relying entirely on a cross-examination of the Herpolsheimers to show that the number of buggies totally destroyed was less than the number claimed. The opportunities for obtaining evidence with respect to the damage to the twine were equally ample. But the record fails to show that the companies, or any one acting in their behalf, ever set on foot a single inquiry to ascertain the name of any person who knew the condition of the twine after the fire. The slightest inquiry in that direction could not have failed to disclose the name of the identical witness on whose evidence they now rely for a new trial. The only reason we can find in the record for their failure to discover this witness before the trial on the merits is that they made no effort to do so.

In an application for a new trial on the ground of newly discovered evidence, the statute requires that the application should show that the newly discovered evidence could not, with reasonable diligence, have been discovered and produced at the trial. Code, sec. 318. A litigant cannot expect to discover evidence without effort or inquiry. Due diligence requires that he should make some effort to obtain it, and not wait for those having knowledge of the facts to give information unasked. As was said in *Secord v. Powers*, 61 Neb. 615: "It is not the policy of the law to encourage actions of this kind. There must be an

end to litigation. A party cannot be permitted to experiment with his case at the expense of the public. He is not justified in assuming that his adversary will not produce evidence to make good the averments of his pleading." We do not overlook the fact that the twine was sold for a substantial sum after the judgments were rendered, but that cannot be regarded as newly discovered evidence entitling the companies to a new trial. We have already commented, to some extent, on this feature of the case. It may be said further that the valuation placed on many other articles at the trials was based on the opinions of the witnesses. In the future those articles may be sold for more or less than the valuation thus placed upon them. But it will hardly be claimed that, whenever one of those articles is sold above or below that valuation, the companies on the one hand, or the Herpolsheimers on the other, will be entitled to a new trial on the ground of newly discovered evidence.

Complaint is made of the ruling on the demurrer to the so-called plea of laches. That ruling excluded no evidence, and interfered in no way with a full and complete showing on the part of the companies. Their failure to show due diligence was signal and complete, and of itself necessitated a finding and judgment against each of them. In other words, the judgments rendered on the applications are the only ones that would have been warranted by the evidence had the demurrer been sustained. Hence, whatever technical error there may have been in overruling the demurrer was error without prejudice.

It is therefore recommended that the judgments of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgments of the district court are

AFFIRMED.