ELVA BOOTH SEWARD ET AL., APPELLEES, V. CHURN RANCH
COMPANY, APPELLANT.

287 N. W. 610

FILED SEPTEMBER 22, 1939.   No. 30641.

*William B. Quigley* and *Barlow Nye,* for appellant.

*Porter, Skaggs & Porter, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
MESSMORE and JOHNSEN, JJ., and LANDIS, District Judge.

ROSE, J.

This action was brought in the district court for Cherry
county to set aside a judgment therein after expiration of
the term of court at which it was rendered.

The parties are owners of adjoining ranches in Cherry
county and are rival claimants to strips of meadow lands
along the boundary line between their possessions.   The
title of the case in which the judgment was rendered was
the Churn Ranch Company, a corporation, plaintiff, against
Elva Booth Seward, John T. Seward and Alva S. Saxton,
defendants.   Saxton had a mortgage on the lands owned by
the Sewards, but disclaimed any interest in other lands
or in the controversy between the other parties.

Prior to the entry of the judgment, the meadow lands in
dispute were fenced with the ranch of the Sewards, were
in their possession and they harvested the hay thereon.
Thereafter, as directed by the judgment, the Sewards were
dispossessed and the fences changed to inclose the lands in
controversy with the lands of the ranch company.

On the first day of the term of court beginning December 2, 1935, the judgment by default was directed against the Sewards.

November 30, 1937, the Sewards, plaintiffs, by other counsel, brought the present suit in equity against the Churn Ranch Company, defendant, praying for a decree vacating the judgment by default and permitting them to defend the action in which it was rendered. In their petition they pleaded, in substance, facts showing that the default was the result of the negligence, deceit and fraud of Lein B. Jacobson, a licensed and practicing attorney whom they had in due time employed, paid and trusted to represent and defend them in the original action; that they promptly informed him of their title and possession; that he promised to act for them as their attorney in the litigation, but, without fault on their part, failed to perform the duties of his employment and, without their consent or knowledge, abandoned the defense and invited and permitted the default; that they had no knowledge or suspicion of any reason to mistrust him as their attorney until long after adjournment of the term of court beginning December 2, 1935. They tendered with their petition an answer in the original action, pleading title and possession prior to the judgment by default.

By answer the ranch company put in issue the facts pleaded as grounds for the relief sought by the Sewards; alleged that it procured the judgment by default in good faith without fraud or misconduct of any kind; that the relief sought by the Sewards was not grantable on any ground enumerated in section 20-2001, Compiled Statutes of 1929, authorizing a district court to set aside a judgment within two years after adjournment of the term of court at which it was rendered; that the Sewards were guilty of such negligence before and after knowledge of the default as to preclude them from obtaining relief in equity; that the action was barred by their own laches. The reply to this answer was a general denial.

Upon a trial of the case at bar, the district court found

the issues in favor of the Sewards, set aside the judgment by default against them and permitted them to defend the original action. The Churn Ranch Company appealed.

On appeal the ranch company argues at length the merits of the defenses pleaded in its answer and insists that the default and resulting judgment could only have been vacated after the term of court at which it was rendered on the statutory ground of "unavoidable casualty or misfortune;" that there was no fraud on the part of the ranch company; that the failure to make a defense to the original action was due solely to the negligence of the Sewards or to their attorneys, negligence which was attributable to them; that such negligence is not an "unavoidable casualty or misfortune" within the meaning of the law; that relief in equity was barred by laches.

The applicability of these propositions to the controlling facts of the case is the important inquiry. The evidence tends to prove the following facts: The Sewards made their home on their ranch in Cherry county. They were not familiar with court procedure and did not themselves know how to protect in court their legal rights. Promptly after the sheriff served the summons upon them, they made the long trip from their home in Cherry county to Gordon, in Sheridan county, and consulted, employed and paid Lein B. Jacobson to represent them and protect their rights in the litigation to deprive them of their property. They had seen his card in a newspaper. He was a regularly licensed attorney who was permitted to practice law in the courts of Nebraska. Unknown to them he was an inebriate. At the expense of Sheridan county he had been committed to the asylum for the insane at Lincoln time and again for treatment as a dipsomaniac. On account of inebriety he had been in other hospitals in Lincoln, Omaha, Council Bluffs, Minneapolis, Hot Springs and elsewhere. He had formerly used morphine daily for about a year and had used it afterward in trying to sober up.

When the Sewards employed Jacobson, they informed him of their title and of their possession of the hay land which

the ranch company was seeking to recover. He advised them it would be necessary for them to have a survey by the state surveyor, appointed by the commissioner of public lands and buildings. They gave him $150 for expenses of the survey and afterward paid him an additional $100. Later he informed them he had gone to Lincoln promptly and had arranged for the survey. The application therefor was not filed in the office of the commissioner of public lands and buildings until May 3, 1937. Prior to the term of court beginning December 2, 1935, the Sewards consulted their attorney about the necessity of being present in court at that time and he advised them it would be unnecessary as he would have the case put over until after the making of the survey. Instead of doing so or of otherwise performing the duties of his employment as an attorney, he directed and mailed to an attorney on the other side of the case a post-card stating:

"In Seward case will say that in view of our former conversation we will not appear in the case further. Lein B. Jacobson."

This was not authorized by his clients and was unknown to them. Jacobson had appeared in the case. The post-card was received on the afternoon of December 2, 1935, by counsel for the ranch company, was then presented to the presiding judge and was treated by the court and opposing counsel as the action of Jacobson's clients. It played its part in the default. The Sewards did not know judgment had been pronounced against them until the sheriff came to their ranch to dispossess them in April, 1936. They again importuned their attorney to protect their rights and property and he assured them he would rectify the mistake resulting in the judgment. They did not know he was a drunkard until they found him in a stupor at Gordon in July, 1937. They immediately employed other counsel who brought a suit in equity to set aside the judgment, pleading the facts essential to such relief and tendering an answer stating defenses to the original action. In the trial of the present suit, the evidence contained a survey by the state

surveyor and testimony tending to prove that the judgment by default took from the Sewards approximately 42 acres of their hay land.

The false statement of Jacobson to his clients that, prior to the default, he had arranged for a survey by the state, under the circumstances related, was more than negligence. It amounted to deceit and fraud on his part and misled them to their injury. He did not keep his promise to have the case put over for the survey or inform them of his failure to do so. The mailing of the post-card was more than negligence. It was a betrayal of trust by an attorney in whom his clients confided. It is a proper inference from the evidence that the failure of the Sewards to discover the habits and infirmities of their attorney and to employ instead trustworthy counsel before the default was entered and before adjournment of the term of court was due to Jacobson's deceit and fraud. Both the adverse attorney to whom the post-card was directed and the judge to whom it was presented accepted it in good faith as the deliberate and authorized act of Jacobson for his clients. In view of such credence, it would be casting too great a burden on the Sewards to charge them with negligence, deceit and fraud of their attorney, because they failed to exercise such high degrees of discernment and sagacity as would enable them to determine in advance that he could not be trusted with legal business, though licensed to practice law and permitted by bench and bar to remain in good standing.

The equity power conferred by the Constitution on district courts is ample for the granting of relief in this case, notwithstanding limited powers granted by the statute cited. On the controlling facts the judgment by default was properly set aside. The judge who pronounced it was the judge who annulled it and held it for naught. In doing so he made no mistake.

AFFIRMED.