RICHARD L. EMRY, APPELLEE, V. AMERICAN HONDA MOTOR CO., INC., A CORPORATION, AND RAMER MOTORS, A CORPORATION, APPELLANTS.

334 N.W.2d 786

Filed May 27, 1983. No. 82-050.

Wayne J. Mark of Fraser, Stryker, Veach,

Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant American Honda.

R. M. Dustin, for appellant Ramer Motors.

Thomas A. Gleason of Dolan, Davis & Gleason, for appellee.

BOSLAUGH, McCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and RIST, D.J.

BRODKEY, J., Retired.

Defendants below, American Honda Motor Co., Inc. (hereinafter referred to as Honda), and Ramer Motors (hereinafter referred to as Ramer), appeal to this court from an order entered by the District Court for Douglas County vacating an order of dismissal entered at a prior term of the court and reinstating the case to the trial docket, the petition for vacating such prior order of dismissal having been filed and the hearings thereon held during a subsequent term of that court.

On September 5, 1980, the plaintiff below, Richard L. Emry, appellee in this appeal, filed a petition under the provisions of Neb. Rev. Stat. § 25-2001 (Reissue 1979) to vacate an order of dismissal entered on May 2, 1980, at a prior term of court, because of want of prosecution. Plaintiff's original case, filed June 26, 1975, sought damages for personal injuries to the plaintiff, alleging negligence, breach of implied warranty, and strict tort liability as theories of recovery against Honda and Ramer.

The issues actually tried in the court below were: (1) Whether the circumstances of the death of plaintiff's Minnesota counsel constituted an unavoidable casualty under § 25-2001(7); (2) Whether the local District Court rule 12C of Douglas County requires that the order to show cause be mailed to counsel residing outside of the State of Nebraska, where local counsel has been retained, and whether such failure to do so constitutes omission, neglect, or mistake of the clerk of the court under § 25-2001(3);

(3) Whether the evidence was sufficient for a finding by the court under its equity powers that just cause existed to warrant vacation of the order of dismissal and reinstatement of the case on the regular trial docket; and (4) Whether the attorneys for the plaintiff should be required to produce for inspection and review by the defendants and their attorneys all the files and file material relating to the cause, or whether the attorneys' files were protected by the attorney-client privilege.

In its order entered on November 4, 1981, the court granted the petition of the plaintiff to vacate the dismissal order of May 2, 1980, and stated: "It is therefore ordered that the Court's Order of May 2, 1980, dismissing the above-captioned cause for want of prosecution, be and hereby is vacated and set aside and the above-captioned case be and hereby is ordered restored to the list of active cases of this Court."

The court also specifically ruled in that order that the files of plaintiff's counsel were not available for production for the reason that they were confidential files of the lawyer and his client and the court's requiring their production to opposing counsel could jeopardize the rights of the plaintiff and grant the defendants an improper advantage.

In announcing his reasons for his decision, prior to the actual entering of the order in question, the trial judge stated: "Section 25-2001, subparagraph (3) . . . says that a District Court shall have power to vacate or modify its own judgments or orders after the term in which said judgment or orders were made for three causes. For mistake, neglect, or omission of the clerk, and the Court finds that under that section, why, the order dismissing the above-captioned cause entered on May the 2nd of 1980 be and hereby is vacated and set aside and the above case is restored to the trial list."

The trial judge did not specifically mention in his comments his power to vacate under general equita-

ble principles, but undoubtedly considered them, as he stated: "I know that our court rules say that the Daily Record shall be the official notification, but the way the whole thing is handled and run through, why, where there was other counsel of record, and they were not notified by postcard as they were supposed to be, why, I think in the—for the proper administration of justice and fairness of justice, the plaintiff should have his day in court." Defendants thereafter perfected their appeal to this court.

A review of some of the pertinent facts of this case will be helpful. It should be noted that Emry's original counsel, who filed the products liability case against the defendants, withdrew very early in the case, did so with Emry's consent, and did so of record. Emry thereafter obtained new counsel to represent him in the case, the law firm of Taylor & Malone in Minnesota, and Leonard Shefren, who was appointed by them to be their local counsel in Omaha. It appears that Shefren filed a written appearance in the action on behalf of himself and his cocounsel, Taylor & Malone.

Defendants shortly thereafter commenced discovery procedures in the case, and, except for the appearance of Shefren at an examination of the motorcycle, the attorneys for Emry did not respond to defendants' request for discovery. Because of this lack of participation, at least of record, an order to show cause why the case should not be dismissed for want of prosecution was entered on October 7, 1977. Shefren made a timely response to this order, representing to the court that the plaintiff was awaiting expert opinion and the disposition of a companion case in federal court.

Therefore, and without resistance by the defendants, the case was stricken from the dismissal docket. Notwithstanding the fact that the record reveals that such expert opinion became available and the companion case was settled early in the year 1978, there was no further action on this case.

Thereafter, a second order to show cause was issued by the court in February of 1980.

It appears that during this period of inaction several things occurred. First, Emry's principal attorney, William Taylor of Minnesota, became very ill and died in July of 1978. Taylor's partner, Malone, then began to distribute some of Taylor's cases to other attorneys for the reason that he could not handle them all. He contracted Omaha attorney Daniel Dolan and requested that he handle Emry's case because of the fact that Dolan was experienced with the litigation, having handled and settled the companion case in federal court.

Malone forwarded Emry's file to Dolan on August 31, 1979. However, Dolan testified that he did not accept representation of Emry until July of 1980 because he wanted further information with reference to Emry's injuries before accepting the case. When he finally decided to accept the representation of the plaintiff, he found that the case had been dismissed on May 2, 1980, pursuant to the February order to show cause.

He then filed a petition to vacate the dismissal, based upon the unavoidable casualty of Taylor's death and its attendant confusion. Later, he filed a second amended petition to include mistake, neglect, or omission of the clerk in failing to mail notice of the order to show cause to Taylor & Malone in Minnesota.

It should be noted that at no time did Shefren, Taylor, or Malone formally withdraw of record from this case.

While the record in this case is fairly lengthy, there appears to be little in dispute as to the facts. There is obviously no dispute as to the fact that William Taylor, Minnesota counsel, died, with some resulting confusion. The record is clear, however, that nothing was done to move the case forward from the time of Taylor's death in 1978 until the second order to show cause was entered in 1980. With

the possible exception of the appearance of Shefren in response to the first order to show cause, there was nothing done in the case by plaintiff from November of 1975, when the motorcycle was examined, until September of 1980, at which time the petition to vacate the dismissal was filed. Likewise, there is no question that the clerk of the District Court did not mail the notice of the possible dismissal of the action to Taylor & Malone in Minnesota, and that fact was stipulated at the trial.

We now discuss some pertinent rules of law which we believe are applicable to this case under the facts disclosed in the record. In his brief on appeal to this court, counsel for Emry states at 14: "In deciding whether the trial court was correct in its findings and ruling, under § 25-2001(3), certain rules apply. First, the obligation is on the Defendants-Appellants to show that the trial court abused its discretion in so ruling, because the Nebraska law is clear that a trial court has discretionary power, *either during or after term*, to vacate and modify its own judgments and orders." (Emphasis in original.)

While the statement is correct as to the discretion of the court to vacate and modify during the same term, it is not a correct statement as to the power of the court to dismiss after the term has expired. As early as 1899 this court announced, and has since followed, the rule that "Courts of general jurisdiction possess inherent power to vacate and modify their own judgments at any time *during the term* at which they were pronounced. This power exists entirely independent of any statute. It is derived from the common law, and the provisions of the Code of Civil Procedure relating to new trials do not assume to abolish or abridge it." (Emphasis supplied.) *Bradley v. Slater*, 58 Neb. 554, 555, 78 N.W. 1069 (1899).

The same rule was announced in the recent case of *A. Hirsh, Inc. v. National Hair Co.*, 210 Neb. 397, 398-99, 315 N.W.2d 236, 238 (1982), the court stating:

"A district court has inherent power to vacate or modify its own judgment any time during the term in which it is rendered. *Beliveau v. Goodrich*, 185 Neb. 98, 173 N.W.2d 877 (1970); *Fanning v. Richards*, 193 Neb. 431, 227 N.W.2d 595 (1975). '[T]his is a matter that rests in the sound discretion of the [trial] court. But this discretion is not an arbitrary one. It must be exercised reasonably and depends upon the facts and circumstances in each case as shown by the record.' *Beliveau, supra* at 100, 173 N.W.2d at 879; *Morgan v. Weiner*, 173 Neb. 715, 114 N.W.2d 720 (1962)." In *Hirsh* the court held that the granting of plaintiff's motion to vacate the order of dismissal was an abuse of discretion, and reversed the order and remanded to the District Court with directions to reinstate the dismissal order entered on May 2, 1980. See, also, *Johnston Grain Co. v. Tridle*, 175 Neb. 859, 124 N.W.2d 463 (1963); *Lyman v. Dunn*, 125 Neb. 770, 252 N.W. 197 (1934); *Grosvenor v. Grosvenor*, 206 Neb. 395, 293 N.W.2d 96 (1980). In *Grosvenor* we stated at 402, 293 N.W.2d at 100-01: "At common law, judgments were subject to vacation or modification only during the term in which rendered. *Hamaker v. Patrick*, 123 Neb. 809, 244 N.W. 420 (1932); 49 C.J.S. *Judgments* § 229 (1947). In the absence of statutory authority, a court ordinarily has no power to correct, amend, open, or vacate a valid judgment after the expiration of the term. *Hamaker v. Patrick, supra*; *State, ex rel. Spillman, v. Commercial State Bank*, 143 Neb. 490, 10 N.W.2d 268 (1943)."

As early as 1894 this court held in the case of *Ganzer v. Schiffbauer*, 40 Neb. 633, 59 N.W. 98 (1894), that the power of a District Court over its own judgment during the term at which it is rendered is entirely discretionary; but the discretion of the court as to the vacation or modification of a judgment ends with the adjournment of the term at which such judgment was rendered, and neither the court nor the judge has any authority to vacate or modify a

judgment rendered by it after the term at which it was rendered, except for the causes and in the manner prescribed by the statute, and except in the exercise of its general equity powers.

The present statement of the rule is set out in *Lienemann v. Lienemann*, 197 Neb. 449, 453, 249 N.W.2d 902, 904 (1977), as follows: "Our law is well settled. After the final adjournment of the term of court at which a judgment has been rendered, the court has no authority or power to vacate or modify the judgment except for the reasons stated and within the time limited in section 25-2001, R.R.S. 1943."

Also, in *State v. Byrd*, 186 Neb. 330, 331, 183 N.W.2d 234, 235 (1971), we stated: "Section 25-2001, R.R.S. 1943, provides the grounds on which a district court shall have the power to vacate or modify its judgments or orders after the term at which they were entered has expired. The power to modify or set aside a judgment ends with the adjournment of the term at which it was rendered except as provided in section 25-2001, R.R.S. 1943. Meier v. Nelsen, 156 Neb. 666, 57 N.W.2d 273. . . . In an action to vacate judgment after the adjournment of the term, the applicant must allege and prove that he exercised due diligence and that his failure to secure a proper decision was not due to his fault or negligence. Citizens Ins. Co. v. Herpolsheimer Implement Co., 78 Neb. 707, 111 N.W. 606." See, also, *Shipley v. McNeel*, 149 Neb. 793, 32 N.W.2d 636 (1948); *Brown v. Lincoln*, 157 Neb. 840, 61 N.W.2d 836 (1954).

In *Brown, supra*, after stating the general rule, this court stated at 841, 61 N.W.2d at 837: "It is plain from the record that no action was taken with reference to the judgment of dismissal during the term at which it was entered. In fact, as hereinbefore stated, one subsequent term of court was permitted to pass by before any attempt was made to have the judgment vacated. No attempt was made to comply with section 25-2001, R.R.S. 1943, and con-

sequently the trial court lost all power or authority to modify or vacate the judgment in the manner in which it purported to do so.''

While it is true that plaintiff did attempt to comply with § 25-2001, his first petition to vacate being based on § 25-2001(7), ''for unavoidable casualty or misfortune, preventing the party from prosecuting or defending,'' it is important to note that unavoidable casualty alone does not provide a basis for vacating a judgment after term. That casualty must also be one '' 'preventing the party from prosecuting or defending.' '' *Norfolk Packing Co. v. American Ins. Co.*, 116 Neb. 118, 122, 216 N.W. 309, 310 (1927).

In the instant case it is true that Taylor's death probably was an unavoidable casualty or misfortune, yet it cannot be said that his death prevented Emry from prosecuting his claim. It would seem that 2 years was certainly a long enough time for the confusion resulting from his death to subside. Even if there were lingering confusion as to who was handling the case, the respective attorneys might have at least recognized that there was confusion and governed themselves accordingly. We believe that this appeal could have easily been avoided; for example, if there had been formal appearances and withdrawals of the attorneys *of record*.

The rule is well established in this state that lack of diligence or negligence of counsel is not an unavoidable casualty or misfortune. *Shipley v. McNeel, supra*; *Lyman v. Dunn*, 125 Neb. 770, 252 N.W. 197 (1934).

Plaintiff also attempts to bring himself under the provisions of § 25-2001(3) on the basis of ''mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order.'' He contends that the failure of the clerk to mail notice of the order to show cause to Minnesota counsel was ''neglect or omission.''

His contention is based on rule 12C of the Douglas County District Court, which reads in part: ''Notice

of said order to show cause shall be served on all interested parties by publication in The Daily Record. Counsel residing outside Douglas County shall be served by mail." Plaintiff argues that the only way the clerk could have protected the interests of the plaintiff would have been to mail notice to Taylor & Malone in Minnesota. This argument is based on the assertion that "as a practical matter, the only attorney representing the Plaintiff in February, 1980, was Taylor's associate, Malone." Brief for Appellee at 15.

We find this argument untenable. It must be remembered that the record is clear that plaintiff at that time was represented by counsel of record, who had not withdrawn. Notwithstanding the wording of the court rule referred to, we note that Neb. Rev. Stat. § 7-103 (Reissue 1977) provides for the admission of practicing attorneys of other states to be admitted to practice for the purpose of said business upon the showing that "he has associated and appearing with him in the action an attorney who is a resident of Nebraska duly and regularly admitted to practice in the courts of record of this state upon whom service may be had in all matters connected with said action with the same effect as if personally made on such foreign attorney within this state; *Provided*, regularly licensed practicing attorneys of other states, the laws of which states permit the practice in its courts of attorneys from this state without a local attorney being associated with such attorney, shall not be required to comply with the provisions of this section."

With regard to the proviso, there is no evidence in the record as to what the law of Minnesota is with regard to a reciprocal right or provision, and the existence of such a provision, if such there be, not being pleaded or presented under the Uniform Judicial Notice of Foreign Law Act, Neb. Rev. Stat. § 25-12,101 et seq. (Reissue 1979), cannot be taken as established. The service of notice of the order and

knowledge on the part of local counsel should, we believe, be sufficient, even if we were to consider the failure to serve Minnesota counsel as a technical violation of the act. We also note that Emry's file was transferred to attorney Dolan on August 31, 1979. A technical failure of the clerk to mail notice to Minnesota counsel, in our opinion, was not harmful, as at that time the file had already been transferred to Dolan. There is no reason to presume that Malone would have done anything different upon receiving the mail notice than Shefren in his testimony claims he would have done upon seeing the notice in The Daily Record; that is to say, nothing. In this connection, see, Neb. Rev. Stat. § 25-12,104 (Reissue 1979); *Smith v. Brooks*, 154 Neb. 93, 47 N.W.2d 389 (1951); *Scott v. Scott*, 153 Neb. 906, 46 N.W.2d 627 (1951).

We believe that the comments of Chief Justice Krivosha in his concurring opinion in the case of *Nebraska State Bank v. Dudley*, 203 Neb. 226, 231-32, 278 N.W.2d 334, 337-38 (1979), are particularly pertinent. He stated: "I am in full agreement with the majority opinion in this case. I add this concurring opinion solely for the purpose of highlighting a matter which I believe deserves particular attention. In this case the record indicates that defendants' Iowa attorney was joined by Nebraska counsel. The record further indicates that Nebraska counsel's name appeared on the various pleadings and on the briefs filed in this court. Yet Nebraska counsel did not appear in this court at the time of oral argument, nor does the record indicate when, if at all, Nebraska counsel participated in this matter in the trial court. It is obvious that had Nebraska counsel been more actively involved in the trial of this case, Iowa counsel might not have failed to timely file a motion for new trial.

"The purpose of resident counsel joining with nonresident counsel is obvious. It is to insure that the nonresident counsel will be associated with a coun-

sel involved in the litigation who is knowledgeable and familiar with the laws and practices of this state. By permitting his name to be affixed to a pleading or brief, a resident lawyer represents to this court that he is a part of the litigation and a counsel of record. Accordingly, he should be held accountable for the transaction of the litigation to the full extent as if there were no nonresident counsel. A resident lawyer should not permit his or her name to be affixed to pleadings or briefs unless he or she intends to be involved in the litigation and familiar with the actions taken by nonresident counsel."

We are of the opinion that the failure of the clerk to mail notice of the order to show cause to Taylor & Malone in Minnesota was not sufficient mistake, neglect, or omission to justify vacating the dismissal.

The third and final argument offered by Emry to support the order below involves the jurisdiction of the court in equity. It is true that § 25-2001 is not the exclusive remedy for vacating a judgment after the term has expired. That statute is concurrent with an independent equity jurisdiction. *Shinn v. Shinn*, 148 Neb. 832, 29 N.W.2d 629 (1947); *Norfolk Packing Co. v. American Ins. Co.*, 116 Neb. 118, 216 N.W. 309 (1927); *Kulhanek v. Kulhanek*, 106 Neb. 595, 184 N.W. 139 (1921).

We note at the outset that to proceed in equity the litigant must show that he was without a remedy at law; more specifically, that § 25-2001 could not serve him. *Shipley v. McNeel*, 149 Neb. 793, 32 N.W.2d 636 (1948); *Lindstrom v. Nilsson*, 133 Neb. 184, 274 N.W. 485 (1937). We believe that the language of the court in *Lindstrom* is particularly pertinent in this regard: "This court is committed to the rule that equity will not afford relief if the complainant has a remedy by statutory proceeding in the original action, and that to be entitled to equitable relief a party must not have neglected to avail himself of the statutory remedy. See *Brandeen v. Beale*, 117 Neb. 291, 220

N.W. 298; *Krause v. Long*, 109 Neb. 846, 192 N.W. 729.

"Plaintiff's attorney of record was present on February 9, 1931, when the order of dismissal was entered, and he was fully advised at all times of the action taken. It has been repeatedly held by this court that notice to the attorney of record is notice to the party represented by such attorney. *Marshall v. Rowe*, 126 Neb. 817, 254 N.W. 480; *Goergen v. Department of Public Works*, 123 Neb. 648, 243 N.W. 886.

"No good cause has been shown by plaintiff why proceedings were not instituted to vacate the order of dismissal within the two-year period provided by section 20-2008, Comp. St. 1929. Even after plaintiff discovered the situation, she delayed for a year and a half before taking any action whatsoever, and more than two years before filing her amended petition on which the trial was had. Five separate attorneys or firms of attorneys represented plaintiff up to the time of the dismissal of her action, three of whom withdrew at various times when the case was noted for trial. Each time the defendant had gone to considerable expense in preparing for trial. Defendant was entitled to a final disposition of the suit against him within a reasonable time, and the trial court did not err in dismissing plaintiff's action for want of prosecution, and we find no error in the decree of the equity court in refusing to set aside the order of dismissal." *Id.* at 186, 274 N.W. at 486-87.

The case at bar does not present a situation sufficiently akin to other cases where equity has been used so as to indicate it should be used here. An example of the use of equity in Nebraska in this regard is *Shinn v. Shinn*, *supra*. There, the court found that a fraud perpetrated on the court would be equitable grounds to vacate a decree of divorce. Another example is *Norfolk Packing Co. v. American Ins. Co.*, *supra*. There, the court found that the destruction of the bill of exceptions, without fault of

the petitioner, did provide a sufficient basis for equitable relief.

Finally, plaintiff calls attention to the case of *Seward v. Churn Ranch Co.*, 136 Neb. 804, 287 N.W. 610 (1939). He claims that this case stands for the proposition that "negligence of an attorney and his failure to perform his duties" does provide an equitable basis to set aside a default judgment. Brief for Appellee at 22-23.

We believe that his interpretation is strained, to say the least. In that case the court specifically decided that what the attorney did was "more than negligence. It amounted to deceit and fraud on his part and misled them [his clients] to their injury. . . . It was a betrayal of trust . . . ." *Seward v. Churn Ranch Co.*, *supra* at 808, 287 N.W. at 612. Certainly, the plaintiff in this case is not contending that his attorneys engaged in such conduct.

Under the facts of the instant case we do not believe equitable relief is warranted.

In view of our conclusions with respect to the issues of the case, it is unnecessary for us to, and we do not, reach the issue of the court's refusal to permit the defendants to have access to the attorneys' files.

We conclude, therefore, that the trial court had no authority under § 25-2001, or in equity, to vacate the previous dismissal of the action, and therefore the order of the District Court so doing must be, and hereby is, reversed and the cause remanded with instructions to reinstate the previous order of dismissal.

REVERSED AND REMANDED
WITH DIRECTIONS.