IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

VANDELAY INVESTMENTS V. BRENNAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VANDELAY INVESTMENTS, L.L.C., APPELLEE,

V.

MARY IRENE BRENNAN AND LARRY ROBERT BRENNAN, COTRUSTEES
OF THE MARY IRENE BRENNAN TRUST, APPELLANTS.

Filed March 8, 2016.    No. A-15-269.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Douglas W. Ruge for appellants.

Robert S. Lannin, of Shively & Lannin, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

BISHOP, Judge.

In this quiet title action brought by Vandelay Investments, L.L.C. (Vandelay), Larry Robert Brennan (Robert), cotrustee of the Mary Irene Brennan Trust (Trust), appeals from the order of the district court for Douglas County overruling his motion to vacate a default judgment entered in Vandelay's favor. Robert maintains the district court, in ruling on his motion to vacate the default judgment, improperly limited its analysis to Neb. Rev. Stat. § 25-2001(4) (Reissue 2008), and failed to consider whether, under the court's independent equity jurisdiction, the default judgment should have been set aside. Because Robert has not established a right to have the default judgment set aside on either statutory or equitable grounds, we affirm.

BACKGROUND

In August 2007, Robert and his sister, Mary Irene Brennan (Mary), as cotrustees of the Trust, purchased a property on Read Plaza in Douglas County, Nebraska, by warranty deed. Mary occupied the property as her primary residence; Robert resided elsewhere.

The property taxes for 2008 were not paid. On March 1, 2010, the county treasurer sold the property at a delinquent tax sale and issued a tax sale certificate. On March 13, 2013, the purchaser of the property assigned the tax sale certificate to Vandelay. On August 28, 2013, Vandelay obtained a treasurer's tax deed. On February 3, 2014, Vandelay initiated this quiet title action, naming as defendants Robert and Mary as cotrustees of the Trust.

After Vandelay unsuccessfully attempted certified mail service on Robert and Mary at the Read Plaza address, the district court permitted service by publication. Neither Robert nor Mary filed an appearance. On May 7, 2014, on Vandelay's motion, the court entered default judgment in Vandelay's favor.

On February 6, 2015, Robert filed a motion to vacate the default judgment. He alleged Mary passed away on December 6, 2014, and that prior to her death, she "had been going through intensive treatment and was often disoriented." Robert alleged he and Mary did not have "actual notice" of the impending tax sale or of this quiet title action. According to Robert, he did not discover the tax sale or the quiet title action until listing the property for sale as part of administering Mary's estate.

Along with his motion to vacate, Robert submitted a proposed answer and counterclaim in which he alleged the "Notice of Tax Sale" was defective and the "Tax Notice" was not "properly served" in that there "was no personal or residential service." Robert alleged service was "in fact perfected by publication."

On February 13, 2015, a hearing was held at which the parties submitted affidavits and brief argument. Vandelay submitted the affidavit of Randy James, its managing member and attorney. In his affidavit, James stated that after obtaining the treasurer's tax deed on August 28, 2013, he received an invoice indicating that homeowners' association dues were unpaid as of September 2013; according to James, this indicated defendants ceased paying the dues shortly after issuance of the tax deed.

James further stated that after the default judgment was entered on May 7, 2014, he received telephone calls from Mary beginning on May 23. In the calls, Mary advised James that she was aware of the issuance of the tax deed, of the pending quiet title action, and of the entry of judgment. In addition, Mary detailed various financial matters involving her family, including that property taxes had been unpaid beginning in 2008.

In his two affidavits, Robert stated the following. Prior to Mary's death, she underwent extensive medical treatment for a period of 21 months and was often disoriented. Neither Robert nor Mary was aware of the impending tax sale or the quiet title action. The property was purchased in 2007 with cash from Robert and Mary's father and had no loans or security interests associated with it. At all times, Robert, Mary, and their father had substantial cash reserves exceeding the obligations at issue.

Robert further stated in his affidavits that he had "a hard time believing [Mary] spoke with Randy James in May and June 2014." According to Robert, Mary was in continual contact with Robert and her father during this period and never brought up the tax sale or this action. Robert stated that, knowing his sister, he believed she would have mentioned these matters. Furthermore, had Robert or his father been aware of any delinquent taxes, either of them would have paid the taxes immediately. According to Robert, allowing Vandelay to acquire the property for payment of taxes would result in a substantial windfall and unjust enrichment.

At the conclusion of the hearing, the court took the matter under advisement. On February 26, 2015, the court entered an order overruling Robert's motion to vacate the default judgment. The court noted that because Robert filed his motion outside of the term in which the court entered the default judgment and more than 6 months after its entry, the court's inherent power to vacate or modify its judgments, as provided in § 25-2001(1), did not apply.

The court then observed that under § 25-2001(4)(d), it could vacate or modify its own judgments after the term at which such judgments were made "for erroneous proceedings against an infant or person of unsound mind if the condition of such defendant does not appear in the record of the proceedings." The court reasoned that the only evidence that Mary was of unsound mind during the proceedings was Robert's statement in his affidavit that prior to her death, Mary underwent extensive medical treatment for a period of 21 months and was often disoriented. The court cited James' affidavit as contrary evidence, because it detailed telephone conversations with Mary in May and June 2014, in which Mary expressed awareness of the delinquent taxes, the tax sale, and the default judgment. The court found there was insufficient evidence to establish that Mary was of unsound mind, making the exception in § 25-2001(4)(d) inapplicable.

Robert timely appeals to this court.

## ASSIGNMENTS OF ERROR

Robert assigns the district court erred (1) in ruling that it did not have the power to vacate the default judgment and in failing to vacate the default judgment, and (2) in ruling that it was constrained by § 25-2001 and that no exceptions applied to allow the court to vacate the default judgment.

## STANDARD OF REVIEW

An appellate court reviews a decision on a motion to vacate or modify a judgment for an abuse of discretion, where the decision on the motion was an exercise of the trial court's statutory authority. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). Where a decision on a motion to vacate or modify a judgment was an exercise of the trial court's independent equity jurisdiction, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Id*.

## ANALYSIS

Robert's assignments of error and arguments on appeal primarily focus on whether the district court, in ruling on his motion to vacate the default judgment, improperly limited its analysis

to § 25-2001(4), and failed to consider whether, under the court's independent equity jurisdiction, the default judgment should have been set aside as an equitable remedy.

Section 25-2001(4) grants a district court authority to vacate or modify its judgments or orders after the term at which such judgments or orders were made on seven distinct grounds. In this case, the district court addressed the applicability of § 25-2001(4)(d), which permits a judgment or order from a prior term to be vacated or modified "for erroneous proceedings against an infant or person of unsound mind if the condition of such defendant does not appear in the record of the proceedings." None of the other grounds in § 25-2001(4) were applicable.

However, the Nebraska Supreme Court "has repeatedly recognized that a court's jurisdiction based on § 25-2001 is concurrent with a court's independent equity jurisdiction." *In re Estate of West*, 226 Neb. 813, 833, 415 N.W.2d 769, 783 (1987). Stated another way, "[t]he power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by [§ 25-2001]." § 25-2001(2).

While a court's jurisdiction under § 25-2001 is concurrent with its equity jurisdiction, this does not mean a party can seek to set aside a judgment or order as an equitable remedy where a remedy exists under the statute. Rather, "a litigant seeking to proceed in equity must show that § 25-2001 is not applicable, because equitable relief does not lie where there is a remedy at law." *Western Fertilizer v. City of Alliance*, 244 Neb. 95, 101, 504 N.W.2d 808, 813 (1993). See, also, *Hornig, supra* (affirming a court's exercise of equity jurisdiction to vacate a judgment where it was clear that none of the provisions in § 25-2001(4) could have served the parties seeking to vacate the judgment).

We note that Robert's motion to vacate the default judgment did not make clear whether Robert was relying upon § 25-2001(4)(d) or upon the court's equity jurisdiction. Thus, we cannot fault the district court for addressing the motion pursuant to § 25-2001(4)(d) rather than pursuant to its equity jurisdiction. However, we need not decide how the court should have addressed the motion, because Robert has not established a right to have the default judgment set aside on statutory or equitable grounds.

Assuming Robert's motion invoked § 25-2001(4)(d), we agree with the district court that Robert did not present sufficient evidence to establish that Mary was of unsound mind, such that Robert did not prove his right to relief under the statute. Furthermore, as Vandelay points out, Robert failed to follow the procedure outlined in Neb. Rev. Stat. § 25-2002 (Reissue 2008), which requires a proceeding to set aside a judgment or order on any of the grounds listed in § 25-2001(4) to be commenced by filing a complaint and serving summons.

Likewise, assuming the district court should have considered Robert's motion under its equity jurisdiction, Robert has not established a right to equitable relief. We may address Robert's claim to equitable relief because, once an appellate court acquires equity jurisdiction, it can adjudicate all matters properly presented and grant complete relief to the parties. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

A party seeking relief in equity from a default judgment must show that he or she has a meritorious defense to the action. *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986); *Seward v. Churn Ranch Co.*, 136 Neb. 804, 287 N.W. 610 (1939); *Western Assurance Co. of Toronto v. Klein*, 48 Neb. 904, 67 N.W. 873 (1896). A treasurer's tax deed is presumptive

evidence that all things whatsoever required by law to make a good and valid tax sale and vest title in the purchaser were done. *Hauxwell v. Henning*, 291 Neb. 1, 863 N.W.2d 798 (2015). Thus, for Robert to show he had a meritorious defense in the quiet title action, he was required to show that there was some basis to attack the validity of the treasurer's tax deed. See *id*. A meritorious defense "means one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts"; a party "is not required to show that he will ultimately prevail, but only that he has a recognized defense that is not frivolous." *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 451, 730 N.W.2d 340, 347 (2007).

Robert contends he had a meritorious defense because (1) Vandelay's service of the "Notice of Tax Sale" failed to comply with "Neb. Rev. Stat. § 77-1832," which according to Robert required personal service, residential service, or service by certified mail; and (2) Vandelay's "Notice of Tax Sale did not comply with Neb. Rev. Stat. § 77-1831 in that it did not contain the requirements of subsection 1 and subsection 6 and did not otherwise comply with that statute." Brief for appellant at 12-13. As we explain, neither of the grounds cited by Robert establishes the existence of a meritorious defense.

The Nebraska Legislature has specifically provided that "[t]ax sale certificates sold and issued between January 1, 2010, and December 31, 2014, shall be governed by the laws and statutes that were in effect on December 31, 2009, with regard to all matters relating to tax deed proceedings, including noticing and application, and foreclosure proceedings." Neb. Rev. Stat. § 77-1837.01(2) (Cum. Supp. 2014). The tax sale certificate in this case was sold and issued on March 1, 2010; thus, the statutes in effect on December 31, 2009, govern.

On December 31, 2009, Neb. Rev. Stat. § 77-1832 (Reissue 2009) provided, in pertinent part, that service of the notice required by Neb. Rev. Stat. § 77-1831 (Reissue 2009) "shall be made by certified mail, return receipt requested, upon the person in whose name the title to the real property appears of record to the address where the property tax statement was mailed." Also on that date, Neb. Rev. Stat. § 77-1834 (Reissue 2009) provided, in pertinent part, that "[i]f the person in whose name the title to the real property appears of record . . . cannot, upon diligent inquiry, be found, then such purchaser or his or her assignee shall publish the notice in some newspaper published in the county and having a general circulation in the county."

Robert contends that the "Notice of Tax Sale," which refers to the notice required by § 77-1831, was not properly served because it was not served by personal service, residential service, or certified mail. It appears Robert is relying upon an amended version of § 77-1832, which provides for service by any of these methods, see § 77-1832 (Cum. Supp. 2014), rather than on the version of § 77-1832 in effect on December 31, 2009, which permitted service by certified mail only. See § 77-1832 (Reissue 2009). Furthermore, Robert ignores that on December 31, 2009, § 77-1834 permitted service by publication. Indeed, Robert alleged in his proposed answer and counterclaim that service of the notice was "in fact perfected by publication." Therefore, Robert has not set forth a meritorious defense to the quiet title action based upon allegedly defective service of the notice required by § 77-1831.

Robert also contends the "Notice of Tax Sale" did not comply with § 77-1831 in that it "did not contain the requirements of subsection 1 and subsection 6 and did not otherwise comply with that statute." Brief for appellant at 13. Again, Robert appears to be relying on an amended

version of the statute, which was not in effect on December 31, 2009. The amended version enumerates six items that must be included in the notice. See § 77-1831 (Cum. Supp. 2014). Subsection (1) of the amended version requires the notice to contain "the following statement in sixteen-point type: UNLESS YOU ACT YOU WILL LOSE THIS PROPERTY." § 77-1831(1). Subsection (6) of the amended version requires the notice to contain three statements, one of which is a statement that "the issuance of a tax deed is subject to the right of redemption under sections 77-1824 to 77-1830." § 77-1831(6).

However, the version of § 77-1831 in effect on December 31, 2009, contained no separately enumerated requirements, and did not require the statements listed in subsections (1) and (6) of the amended statute; the applicable 2009 version provided:

> No purchaser at any sale for taxes or his or her assignees shall be entitled to a deed from the treasurer for the real property so purchased unless such purchaser or assignee, at least three months before applying for the deed, serves or causes to be served a notice stating when such purchaser purchased the real property, the description thereof, in whose name assessed, for what year taxed or specially assessed, and that after the expiration of three months from the date of service of such notice the deed will be applied for.

§ 77-1831 (Reissue 2009). In other words, the only alleged defects cited by Robert were items not required to be included in the notice. Regardless, Robert did not submit a copy of the allegedly defective notice to the district court, and it is not in the record before us. Therefore, Robert has not set forth a meritorious defense to the quiet title action based upon any defect in the notice required by § 77-1831.

In sum, although the outcome is understandably harsh from Robert's perspective, we are unable to provide any relief since Robert has failed to show that he has a meritorious defense to the quiet title action. Therefore, even assuming the district court should have considered Robert's motion to vacate the default judgment under its equity jurisdiction, Robert has not established a right to equitable relief. Because Robert did not establish a right to set aside the default judgment on statutory or equitable grounds, the district court properly overruled Robert's motion to vacate the default judgment.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Douglas County.

AFFIRMED.