KENNETH W. MILLER AND FRANCES MILLER, HUSBAND AND WIFE, APPELLANTS, V. RUSSELL L. MCMILLEN, APPELLEE.

333 N.W.2d 887

Filed May 6, 1983. No. 82-007.

Richards & Richards, for appellants.

Martin, Mattoon, Matzke & Mattoon, for appellee.

Boslaugh, McCown, and Hastings, JJ., and Brodkey, J., Retired, and Garden, D.J.

Garden, D.J.

This is an action seeking to enjoin a purchaser from taking possession of certain farmland by one claiming under an alleged 20-year lease.

A de novo review of the record reflects that on July 28, 1980, Oscar Glover, president of Railroad Car Service Corporation, met with the appellant Kenneth W. Miller at Miller's attorney's office in Chappell, Nebraska, for 2 or 3 hours to discuss obtaining an option to purchase a right-of-way for the Sidney and Lowe Railroad across the south half of Section 31, Township 15 North, Range 49 West of the 6th P.M., Cheyenne County, Nebraska, owned by the appellants, Kenneth W. Miller and Frances Miller, husband and wife. Kenneth W. Miller was represented by his attorney, Robert E. Richards, but Mr. Glover had no attorney present. Although Miller would not sell a right-of-way across his land for the railroad, he had discussed with Glover a trade for other land. As a result of the conference on July 28, 1980, the parties entered into and executed an agreement entitled "Option to Trade Real Estate" which was prepared by Miller's attorney. This option provides that the appellants would convey to Railroad

Car Service Corporation approximately 90 acres of land owned by them out of the above-described land, the exact location to be determined by a survey, in consideration for the conveyance to the Millers by Railroad Car Service Corporation of a quarter section (160 acres of land), acceptable to the Millers, to be purchased by the corporation. The option also provides that the corporation "agrees to enter into a farm lease with Millers to farm the part of the real estate that is not being used by CORPORATION as a railroad and related facilities for a term of twenty (20) years from the date the option is exercised . . . ."

The option was never recorded in the real estate records of Cheyenne County, Nebraska.

On December 18, 1980, the appellants signed a letter agreement addressed to Railroad Car Service Corporation agreeing that they would accept certain land in trade for the 90 acres which they had agreed to convey to Railroad Car Service Corporation in the option. The letter specified who was to receive the wheat crop to be harvested during the coming summer (1981) from both parcels of land. The letter did not contain any "lease" or reference to, or agreement to make, a lease to the Millers on the 90 acres they were trading to Railroad Car Service Corporation.

On January 20, 1981, the trade of land was completed by an exchange of warranty deeds between the Millers and Railroad Car Service Corporation. The Miller deed to Railroad Car Service Corporation did not reserve any leasehold interest, nor is there any reference to a lease or a right to a lease in the deed. Both deeds recited that the consideration is "Exchange of Property." Both deeds were recorded in the real estate records of Cheyenne County, Nebraska. The Miller to Railroad Car Service Corporation deed was recorded on January 21, 1981.

The railroad track which was constructed by

Railroad Car Service Corporation included a 7,243-foot-long "loop" used to turn trains around. The specifications for the design of the loop were established by the Burlington Northern Railroad. Originally, Railroad Car Service Corporation wanted to construct the loop as close to the Burlington as possible. This plan would have placed the loop on the land acquired from the Millers, which is adjacent to the main line of the Burlington Northern.

The Burlington Northern determined and established the percentage degree of curvature of the loop specifications and that the loop had to be a very gradual curve. For this reason it was necessary for Railroad Car Service Corporation to move the location of the loop from land acquired from the Millers to land later acquired from the appellee, Russell L. McMillen.

In order to acquire a location for the railroad track loop, it was necessary for Railroad Car Service Corporation to acquire 292 acres from McMillen. McMillen required a payment of $125,000 and conveyance of the unused balance of the Miller land as consideration for the 292 acres of land needed by Railroad Car Service Corporation for location of the loop.

On May 20, 1981, Railroad Car Service Corporation conveyed by corporation warranty deed to Russell L. McMillen 77.97 acres of the former Miller land in exchange for approximately 292 acres where the loop was constructed. The deed to McMillen of the former Miller land contains no reference to any lease claimed by Miller and no reservations of any leasehold interest, and was recorded May 29, 1981.

McMillen went into possession and farmed the 77.97 acres of land that formerly was owned by the Millers during the entire summer of 1981, without any notice or knowledge that Miller claimed a leasehold interest in the land. McMillen, during the summer of 1981, summer-fallowed the land and performed three farming operations on it, consisting of

two discings and one sweeping with a rod attachment to prepare for planting. He did his last summer fallow operation during the latter part of August 1981, and then was served with the restraining order in this case on September 1, 1981. There is no evidence that McMillen had any actual or constructive notice of the Millers' claim that they had a leasehold interest in the land until McMillen was served with the restraining order, after he had farmed the land for the complete summer of 1981.

Trial was had and the trial court found as follows: "1. That the land here involved was initially acquired from plaintiffs by Railroad Car Service Corporation (hereinafter The Corporation) for use for a 'railroad and railroad related facilities', specifically for the construction of a railroad track 'loop' and such purpose was known to plaintiffs.

"2. That plaintiffs were aware, and the contract here involved makes clear, that any rights plaintiffs had to a farm lease were limited to that portion of the land, if any, not used by The Corporation for a 'railroad and related facilities'.

"3. That through no fault of or design by either plaintiffs or The Corporation, the land proved not suitable for the purpose for which it had been acquired, i.e., the construction of the required track 'loop'.

"4. That upon discovering the unsuitability of the land for the purpose for which it had been acquired, The Corporation promptly traded 77.97 acres thereof for land fit for that purpose and did, in fact, construct the required 'loop' and related facilities upon the latter land.

"5. That, considering the totality of the circumstances here involved, the trading of 77.97 acres of the land was, and is, in fact a user of that portion of the land for 'a railroad and railroad related facilities' and that plaintiff has no right to a farm lease over the 77.97 acres so used."

The trial court then dissolved and set aside the

temporary injunction previously ordered and dismissed appellants' petition at appellants' cost.

The appellants assigned as error the finding of the trial court that the 77.97 acres of land are being used as "a railroad and related facilities"; that there was no valid farm lease on the acreage in question between the corporation and appellants; and in overruling the appellants' motion for new trial. For reasons hereinafter set forth, it is not necessary to discuss the first and second assignments of error.

It is undisputed in the trial record that McMillen was a bona fide purchaser for value of the 77.97 acres from Railroad Car Service Corporation. The record further reflects conclusively that the real estate in dispute was unimproved farmland. There were no facts adduced that would have put McMillen on either actual or constructive notice that the Millers claimed any interest whatsoever in the land. The Millers conveyed to Railroad Car Service Corporation on January 20, 1981. Four months later, Railroad Car Service Corporation conveyed to McMillen. The record is devoid of any acts by the Millers during that period of time that would be consistent with possession on their part. The Millers were in a position to protect their claimed leasehold interest in the 77.97 acres in question by a timely recording of the option or by reserving a leasehold interest in the deed to Railroad Car Service Corporation. This they failed to do. Neb. Rev. Stat. § 76-104 (Reissue 1981) provides as follows: "An otherwise effective conveyance of property transfers the entire interest which the conveyor has and has the power to convey, unless an intent to transfer a less interest is effectively manifested. No words of inheritance or other special words are necessary to transfer a fee simple."

As a result of the Millers' failure to act, McMillen was justified in relying on the recorded deed that reflected Railroad Car Service Corporation as the sole owner of the 77.97 acres.

Neb. Rev. Stat. § 76-238 (Reissue 1981) provides: "All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded; *Provided*, that such deeds, mortgages and other instruments shall be valid between the parties."

In *Karmann v. Haase*, 191 Neb. 839, 842, 218 N.W.2d 242, 245 (1974), we said: "Fundamental to the law of registry is the principle of establishing priority of title. Section 76-238, R.R.S. 1943, is designed to protect a subsequent purchaser even though there was a prior conveyance or transaction concerning the property, provided the subsequent purchaser recorded his title first, and provided further that the subsequent purchaser was a bona fide purchaser without notice of any other claims to the property."

As between the Millers and Railroad Car Service Corporation, a dispute may exist concerning the purported 20-year lease. No such issue exists between the Millers and McMillen. As a bona fide purchaser for value, without notice, either actual or constructive, of the claims of the Millers, McMillen took title to the 77.97 acres from Railroad Car Service Corporation free and clear of the 20-year lease referred to in the option between the Millers and Railroad Car Service Corporation. The action of the trial court in dissolving the temporary injunction and in dismissing the appellants' petition was correct and is affirmed.

AFFIRMED.