KIMCO ADDITION, INC., APPELLANT, V. LOWER PLATTE SOUTH NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION, APPELLEE.

440 N.W.2d 456

Filed May 26, 1989.    No. 87-1035.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellant.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and SPRAGUE and MULLEN, D. JJ.

CAPORALE, J.

In this inverse condemnation action, plaintiff-appellant, Kimco Addition, Inc., seeks damages for the expanded portion of an easement defendant-appellee, Lower Platte South Natural Resources District, exercises through a tract of land Kimco owns. The district court overruled Kimco's motion for summary judgment on the sole issue of its entitlement to damages, and sustained Lower Platte's motion for summary judgment, thereby dismissing Kimco's petition. Kimco assigns eight errors, which merge to challenge the district court's finding that (1) any cause of action which may have existed is time barred, and (2) in any event, Kimco failed to establish a cause of action. We affirm in part and in part reverse and

remand for further proceedings.

The easement in question embodies a drainage channel consisting of a "cut or depression in the earth," commonly known as Dead Man's Run. The portion of the channel with which we are concerned runs across an irregular tract of land located at the southeast corner of 56th and Holdrege Streets in Lincoln, Nebraska.

The easement was created in 1929 when Emma and Ada Kuhn, then owners of the tract, granted Sanitary District No. 1 of Lancaster County and "its successors and assigns forever"

> a perpetual easement and right-of-way for the construction, maintenance, building and repairing of a ditch . . . including the right of ingress and egress to and from said ditch . . . .
>
> . . . .
>
> . . . but only so much of said strip of ground is to be used in the construction of said ditch as shall be necessary for said ditch purposes . . . .

The Kuhn easement was not recorded, however, until August 15, 1942.

In 1959, in order to widen the drainage channel, Sanitary District No. 1 acquired and recorded an easement 88 feet wide, which was to "run with the land" and include a right of ingress and egress. On June 15, 1962, Sanitary District No. 1 assigned its rights in and to the aforesaid easement to the Salt-Wahoo Watershed District, which assignment was recorded April 16, 1963. As a natural resources district, Lower Platte succeeded, under the provisions of Neb. Rev. Stat. § 2-3206 (Reissue 1987), to the assets of Salt-Wahoo on July 1, 1972, and thereby acquired the aforesaid easement.

Between August 3, 1973, and May 1, 1974, Lower Platte again widened the drainage channel with the permission of the owner, Charleston Court, Inc. On January 7, 1974, Charleston Court granted Lower Platte an expanded 130-foot-wide easement, describing it as extending "sixty five (65') Feet each side of" a specified centerline, in order that Lower Platte might "construct, reconstruct, maintain and operate a drainage channel and necessary appurtenances thereto," and giving Lower Platte the right of ingress and egress. Because the

document describing this expanded Charleston Court easement was never acknowledged, it was not recorded until April 12, 1984, when Lower Platte's then general manager, Glenn D. Johnson, executed and recorded an affidavit reciting that the Charleston Court easement, which was attached to his affidavit, had been delivered to Lower Platte on or about January 7, 1974.

According to Johnson, Lower Platte considered itself to possess a 130-foot-wide easement when it widened the channel. However, the construction drawings indicate that the drainage channel itself was designed to be only 59 feet on either side of the centerline specified in the Charleston Court easement, or a total of 118 feet in width. Johnson noted that the channel as built varies in width and that the 130-foot easement the construction plans contemplated "is broader than the drainage channel itself and covers an additional 5 to 10 feet on either side of the actual drainage channel [which] is necessary for access to and from the drainage canal for the purpose of inspection, repair and maintenance . . . ." Johnson also testified that Lower Platte inspected the drainage channel and "performed weed, grass and tree control on the easement area" on an annual basis.

The servient tract underwent several changes of ownership until First Savings Company of Lincoln acquired it by sheriff's deed pursuant to a mortgage foreclosure for a stated consideration of $350,000. That deed was recorded on April 11, 1980. "Pursuant to Articles of Merger," First Savings then transferred ownership of the tract by a corporation warranty deed recorded October 13, 1983, to First National Lincoln Corporation, which subsequently became known as FirsTier, Inc. All further references to First National Lincoln Corporation shall be by the designation FirsTier, whether the reference relates to events occurring before or after the name change.

Before transferring title to FirsTier, First Savings, on August 1, 1980, applied to the city of Lincoln for a permit to subdivide the tract. On September 11, 1980, Lower Platte wrote a letter to the Lincoln City-Lancaster County Planning Department, asking that Lower Platte be granted a 130-foot-wide easement across the tract "for channel construction operation and

maintenance purposes on Dead Man's Run at that location" prior to approving First Savings' application for subdivision of the tract. The letter also stated that Lower Platte's "bank stabilization construction in that area has been based on having a 130' easement."

On September 25, 1980, Lower Platte unsuccessfully sought a 130-foot easement across the tract from First Savings. Lower Platte's like request of FirsTier on April 6, 1984, met the same fate.

On February 24, 1987, FirsTier transferred the tract to Kimco by corporation warranty deed recorded March 27, 1987. FirsTier also assigned to Kimco its rights in this then pending action against Lower Platte. Sometime before purchasing the tract, Kimco apparently applied for a building permit to construct carwashes along both sides of Dead Man's Run. On January 24, 1986, Lower Platte wrote a letter to Kimco's president, stating that a cross section of 60 feet on either side of the centerline of the channel was "necessary to provide the required capacity within the channel for flood flows," and this time asked for a 120-foot-wide easement.

A vice president of FirsTier testified that at the time it acquired the tract, neither it nor First Savings was aware that Lower Platte claimed an easement greater than 88 feet wide, as described in the then record. Thus, Kimco claims that it, as the assignee of FirsTier, is entitled to damages for the 42 feet by which the easement Lower Platte actually exercises exceeds the easement of record.

Neb. Rev. Stat. § 2-3234 (Reissue 1987) grants Lower Platte the power of eminent domain. It has been held that where the holder of an easement across property has the power of eminent domain for the use involved, an action for inverse condemnation is an appropriate remedy for a subsequent bona fide purchaser of the property who purchased without notice of the preexisting interest in land. *Industrial Disposal v. City of East Chicago*, 407 N.E.2d 1203 (Ind. App. 1980); *Cox Enterprises, Ltd. v. Phillips Petro. Co.*, 550 P.2d 1324 (Okla. 1976); *Pettis v. General Tel. Co.*, 66 Cal. 2d 503, 426 P.2d 884, 58 Cal. Rptr. 316 (1967); *State v. Anderson*, 241 Ind. 184, 170 N.E.2d 812 (1960). As stated in *Krambeck v. City of Gretna*,

198 Neb. 608, 614, 254 N.W.2d 691, 695 (1977),

> Inverse condemnation is analogous to an action by a private landowner against another private individual or entity to recover the title to or possession of property. While the property owner cannot compel the return of the property taken, because of the eminent domain power of the condemner, he has a constitutional right, as a substitute, to just compensation for what was taken.

We have held that deeds and other instruments required to be recorded are void as to subsequent bona fide purchasers for value without notice whose deeds or other instruments are first recorded. *Miller v. McMillen*, 214 Neb. 244, 333 N.W.2d 887 (1983); *Ames v. Miller*, 65 Neb. 204, 91 N.W. 250 (1902); Neb. Rev. Stat. § 76-238 (Reissue 1986). Easements are interests in real estate which, to constitute constructive notice to third parties, must be recorded under Neb. Rev. Stat. § 76-211 (Reissue 1986). See *Darsaklis v. Schildt*, 218 Neb. 605, 358 N.W.2d 186 (1984). Thus, Kimco has invoked a proper theory of recovery if it has established a cause of action which is not time barred.

This brings us to the first summarized assignment of error, the district court's conclusion that any cause of action which Kimco may have had is barred by the passage of time.

The district court's conclusion that the period of limitations for inverse condemnation actions is the 10 years within which actions for adverse possession must be brought pursuant to Neb. Rev. Stat. § 25-202 (Reissue 1985) is correct. *Krambeck v. City of Gretna, supra.* However, the district court's conclusion that Lower Platte obtained a prescriptive right in an easement 130 feet wide by adversely possessing the easement for a period in excess of 10 years is incorrect.

A party claiming a prescriptive easement must show that its use was exclusive, adverse, under claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period; if the use begins as a permissive one, it retains that character until notice that the use is claimed as a matter of right is communicated to the owner of the servient estate. This rule is not affected by transfer of either the licensee's or licensor's title. *McCaslin v. Meysenburg*, 228 Neb.

748, 424 N.W.2d 331 (1988); *Gerberding v. Schnakenberg*, 216 Neb. 200, 343 N.W.2d 62 (1984). Here, Lower Platte's expanded easement began permissively, and the use was later confirmed by the unrecorded easement. See *McCaslin v. Meysenburg, supra*, holding that the use of a strip of land pursuant to an unrecorded easement amounts to a permissive use, preventing acquisition of title by adverse possession. At no point did Lower Platte provide FirsTier or Kimco with notice that it claimed an expanded 130-foot easement as a matter of right. Quite the opposite, Lower Platte persistently requested that it be granted a wider easement than that of record.

Because Lower Platte's use of the expanded portion of the easement on August 3, 1973, began permissively, Lower Platte could not acquire title to that portion by adverse possession. Thus, the district court's conclusion that Kimco's action is time barred is erroneous.

This brings us to the remaining summarized assignment of error, that the district court erred in concluding that in any event, Kimco failed to establish a cause of action.

Kimco's premise is that it is entitled to damages because its seller and assignor, FirsTier, acquired the tract with notice of only an 88-foot easement and without notice of the unrecorded easement between Charleston Court and Lower Platte. As a general rule, a cause of action is assignable if the action would, on the death of the assignor, survive to the decedent's legal representative. *Forbes v. City of Omaha*, 79 Neb. 6, 112 N.W. 326 (1907). Since under Neb. Rev. Stat. § 25-1401 (Reissue 1985) a cause of action for injury to real estate survives the death of the person entitled to sue, we conclude that actions seeking compensation for the taking of property by the government are assignable. See, *P. C. Monday T. Co. v. Milwaukee Co. E. Comm.*, 24 Wis. 2d 107, 128 N.W.2d 631 (1964), holding appeal of condemnation award assignable; *Florida Power Corporation v. McNeely*, 125 So. 2d 311 (Fla. App. 1960); *State Road Department v. Bender, et al.*, 147 Fla. 15, 2 So. 2d 298 (1941). Thus, as FirsTier's assignee, Kimco acquired all the rights, and only the rights, of FirsTier in this action. *Mid-America Appliance Corp. v. Federated Finance Co.*, 172 Neb. 270, 109 N.W.2d 381 (1961).

Under our law, instruments which may be but are not recorded are void as to subsequent bona fide purchasers who record first. § 76-238. See *Mader v. Kallos*, 219 Neb. 579, 365 N.W.2d 408 (1985). A bona fide purchaser of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent person on inquiry. *Mader v. Kallos, supra*. Therefore, in order to recover damages, Kimco was required to establish that FirsTier purchased for value and without notice, actual or constructive, of the expanded easement, and recorded its interest first. *Id.*

The evidence is that Kimco's assignor acquired the tract upon merging with First Savings, which had paid a consideration of $350,000. Clearly, when two or more corporations effect a merger or consolidation, the

> surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises . . . of each of the merging or consolidating corporations; and all property, real, personal, and mixed, and all debts due on whatever account . . . *and all other choses in action*, and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.

(Emphasis supplied.) Neb. Rev. Stat. § 21-2075(4) (Reissue 1987). "[A]ny claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place . . . ." § 21-2075(5). Thus, the cause of action of a corporation survives the corporation's merger into or consolidation with another corporation and becomes vested in the surviving or new corporation. See, *D.D.J. Elec. Contractors v. Nanfito & Sons*, 40 Conn. Supp. 50, 479 A.2d 1250 (1984); *North American Land Corp. v. Boutte*, 604 S.W.2d 245 (Tex. Civ. App. 1980); *Duffy v. Cross Country Inds.*, 57 A.D.2d 1063, 395 N.Y.S.2d 852 (1977); *Platt Corp. v. Platt*, 21 A.D.2d 116, 249 N.Y.S.2d

75 (1964), *aff'd* 15 N.Y.2d 705, 204 N.E.2d 495, 256 N.Y.S.2d 335 (1965).

First Savings clearly recorded its interest in the tract before April 12, 1984, when Lower Platte filed the affidavit with the attached, unacknowledged easement. We therefore need not, and do not, consider whether the recorded affidavit provides constructive notice of the unacknowledged easement to subsequent purchasers.

As Kimco stands in the shoes of FirsTier, Kimco purchased the tract for value, without actual or record notice of any expanded easement, and recorded its interest first. The inquiry, however, cannot end with that observation, for a purchaser is charged with notice of an easement, the evidence of which is apparent from the inspection of the premises. *Wilbur v. Schweitzer Excavating Co.*, 181 Neb. 317, 148 N.W.2d 192 (1967). Stated another way, one who purchases land burdened with an open, visible easement is ordinarily charged with notice that he or she is purchasing a servient estate. *Johnson v. Mays*, 216 Neb. 890, 346 N.W.2d 401 (1984); *Magnuson v. Coburn*, 154 Neb. 24, 46 N.W.2d 775 (1951).

The question before us resolves into whether the record is such that any phase of this matter is appropriately resolved by summary judgment. Although we have said that the denial of a motion for summary judgment is not a final order and thus not appealable, *Carnes v. Schram, ante* p. 282, 440 N.W.2d 451 (1989), and *Bryant Heating v. United States Nat. Bank,* 216 Neb. 107, 342 N.W.2d 191 (1983), we have also held that when both parties move for summary judgment and the district court sustains one of the motions, the Supreme Court obtains jurisdiction over both motions and can determine the controversy, making an order specifying the facts that appear without substantial controversy and directing such further proceedings as it deems just. *Randall v. Erdman*, 194 Neb. 390, 231 N.W.2d 689 (1975). As has often been noted, summary judgment is appropriate only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from the material facts and that the moving party is entitled to judgment as a matter of

law. *Carnes v. Schram, supra; Five Points Bank v. White,* 231 Neb. 568, 437 N.W.2d 460 (1989); *Hall v. Phillips,* 231 Neb. 269, 436 N.W.2d 139 (1989); Neb. Rev. Stat. § 25-1332 (Reissue 1985).

While the record makes clear that Kimco is not charged with record notice of the full easement Lower Platte exercises across Kimco's tract, the record establishes neither what easement Lower Platte actually exercises nor what an inspection of the tract reveals about Lower Platte's easement. The undisclosed extent of the easement actually exercised by Lower Platte and the undemonstrated result of an inspection of the tract present genuine issues concerning material facts. Thus, while Kimco has established a cause of action, it has not established that it is necessarily entitled to any damages.

Once it is determined that Kimco has established a cause of action which is not time barred, it cannot be said that Lower Platte is entitled to judgment as a matter of law.

Accordingly, the district court's judgment denying Kimco's motion for a limited summary judgment is affirmed; the district court's judgment granting Lower Platte a summary judgment and dismissing Kimco's petition is reversed. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.