[No. 2841-1. Division One. March 22, 1976.]

REX B. VALENTINE, ET AL, *Respondents*, v. PORTLAND TIMBER AND LAND HOLDING CO., ET AL, *Appellants*.

*Leon T. Noble*, for appellants.

*Short, Cressman & Cable, James A. Oliver*, and *Kenneth L. Myer*, for respondents.

SWANSON, J.—QUAERE: If the grantee of an unrecorded and subordinate interest in real property is not joined in an action to foreclose a mortgage on that property, is he bound by the foreclosure decree? The trial court said "yes" and granted summary judgment quieting title in plaintiffs Valentine and Schaap to certain real property in which defendants Portland Timber and Land Holding Company (Portland Timber) and Verde Mining Company (Verde Mining) assert an interest.[1]

Portland Timber is a grantee of the timber and mineral rights to the property. Plaintiffs' claim of superior title rests essentially on a sheriff's deed issued to Harry H. Olson, Inc. (Olson), the mortgagee who purchased at his foreclosure sale and subsequently conveyed the property to plaintiffs. The trial court determined on undisputed facts that the mortgage foreclosure proceeding "cut off" defendants Portland Timber's and Verde Mining's interests in the property, even though they were not parties to the foreclosure action, because Portland Timber's deed from the mortgagor Martinson is subsequent in time to Martinson's mortgage of the premises to Olson and there was no compliance with the recording statute, RCW 65.08.070. We agree and affirm.

The genesis of this controversy was E. C. Martinson's conveyance of the timber and minerals on his property to Portland Timber on October 16, 1964, after having mortgaged the premises the previous year to Olson. Olson's mortgage dated October 30, 1963, was recorded promptly on November 1, 1963, but Portland Timber failed to record its deed until February 4, 1969. On November 18, 1964, Olson commenced foreclosure of its mortgage, but did not name Portland Timber in that action. It is undisputed that Portland Timber's deed was not of record, Portland Timber was not in possession of the premises, and Olson had no actual notice of its interest. A decree of foreclosure was entered ordering the property sold. Olson was the successful bidder

[1] Verde Mining's claim is based on a quit claim deed of the minerals from Portland Timber dated March 27, 1973.

and received a certificate of sale. The court confirmed the sale and a sheriff's deed issued to Olson which was recorded November 25, 1965. Thereafter, Olson sold the premises, including the timber and minerals, to Boyd A. Zepp and Wilma Zepp by real estate contract which the Zepps assigned to the plaintiffs. The assignment was recorded October 15, 1968. Olson conveyed the premises on May 14, 1973, in fulfillment of the contract previously assigned to the plaintiffs.

On these undisputed facts, summary judgment was granted quieting title in plaintiffs Valentine and Schaap. In this appeal following the denial of a motion for reconsideration, defendants assign error only to the orders granting summary judgment and denying reconsideration without further specification.

Because defendants' counsel made the claim to the trial court and to us that he was "denied his day in court," a brief procedural chronology is necessary. Plaintiffs' motion for summary judgment appears to be based upon the pleadings, plaintiffs' request for admissions of fact, the affidavit of Harry H. Olson, and plaintiffs' memorandum in support of their motion.[2] Defendants offered no controverting evi-

---

[2]Defendants have elected to present the record to us on appeal by a statement of facts consisting of two volumes. However, the order granting summary judgment identifies the matters considered in ruling on the motion by this recital: "having examined the affidavits and pleadings . . ." Despite the trial court's warning, "I think under the new rules . . . aren't you required to set forth in it the details of the matters relied on?" the "pleadings" are not included in either volume of the statement of facts. The transcript does contain a complaint and an answer, but it also contains nearly 200 pages of documents apparently not presented to the trial court. Further, the order granting summary judgment recites "affidavits" as being considered, although only one affidavit is included in the statement of facts. Nowhere do we find a clear specification by the trial court of the documents presented and considered in ruling on the motion for summary judgment. Our Supreme Court stated in *American Universal Ins. Co. v. Ranson*, 59 Wn.2d 811, 815, 370 P.2d 867 (1962),

In an appellate review of a summary judgment entered pursuant to Rule of Pleading, Practice and Procedure 56, RCW Vol. 0, this court can review only those matters that have been presented to the trial court for its consideration before entry of the summary judg-

dence, did not respond to the request for admissions of fact, and elected to rely on their pleadings only. Defendants' counsel orally admitted all of the facts offered by the plaintiffs in support of their case, but differed in the conclusion to be reached. He made his position clear when he said, "We are admitting all of the facts that he alleged on his behalf are true. We still contend that he is not entitled to a summary judgment, because the law doesn't support his request for relief." Again, during his argument for reconsideration, defendants' counsel stated,

> Everything in this case is of record or the things that should be of record are not of record and those are the only issues. So there is really no reason for there to be any argument about the facts. The question is what law do you apply to these facts.

An examination of the record reveals no basis for the complaint, "We didn't have our day in court, we didn't get a chance." The court responded with this explanation which the record supports:

> You were given opportunity. Motion for summary judgment was timely brought based upon certain facts set forth in an affidavit. Now, at that point within the time prescribed by the rule you had ample opportunity to bring forth in proper form by affidavit, deposition or anything else any facts that you had. That was the time to have done it.

Defendants appear to oppose the summary judgment primarily on the grounds that (1) Portland Timber was a necessary party to the foreclosure action, and its omission

---

ment. The matters considered may be certified to this court by either of two methods, or a combination of them. First, they may be incorporated in a statement of facts certified by the trial court; second, they may be identified with particularity in the summary judgment signed by the trial court and then furnished to this court by transcript certified by the clerk of court. The reason is obvious: it would be unfair to consider, on appellate review, matters not presented to the trial court for its consideration. We must have before us the precise record—no more and no less—considered by the trial court.

See *Kataisto v. Low*, 73 Wn.2d 341, 438 P.2d 623 (1968). Because the facts are undisputed, we will proceed to consider the appeal.

leaves its interest unaffected by the decree and subsequent sale, and (2) the recording statute, RCW 65.08.070, does not apply because Olson was not a bona fide purchaser for value.

Considering first the question of joinder, we recognize the purpose of the sale under the decree of foreclosure is to pass to a purchaser the entire title to the property, both that of the mortgagor and of the mortgagee, as it was at the time the mortgage was given. G. Osborne, *Mortgages* § 319 (2d ed. 1970). Consequently, joinder of any person having an interest in the property is essential in that, if not joined, his interest will not be affected by the foreclosure. Clearly, due process requires a "day in court" before property interests can be extinguished. To that extent Portland Timber, the vendee of a deed from the mortgagor Martinson, valid between the parties, is a necessary party. That does not mean, however, that failure to join such a person nullifies the action. It only means such a person's interest is unaffected. *Spokane Sav. & Loan Soc. v. Liliopoulos*, 160 Wash. 71, 294 P. 561 (1930). But plaintiffs contend that public policy demands that the failure to join a necessary party be excused by the foreclosing mortgagee's lack of notice, either actual or constructive, of such subordinate interest.

The rule regarding joinder is stated in G. Osborne, *Mortgages* § 322 (2d ed. 1970) at page 672:

> The general rule is that lack of knowledge or notice of the subordinate interest of another person in the mortgaged land does not excuse a foreclosing mortgagee from making such person a party to his suit. If he fails to do so, the subordinate interest, regardless of whether it be legal or equitable and one of ownership or lien, is not subject to the decree.

(Footnote omitted.) There are limitations upon the generality of this rule equally well established: the bona fide purchase rule as to equitable interests; provisions of recording acts; and the common-law doctrine of lis pendens, or

statutes to the same effect.[3] G. Osborne, *Mortgages* § 322 (2d ed. 1970). The limiting exception applicable here is the provision of our recording act, RCW 65.08.070, which provides as follows:

> A conveyance of real property . . . may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record.

By its terms an unrecorded conveyance is void as against a subsequent purchaser in good faith for value from the same vendor of the same property whose conveyance is first recorded.[4] In describing the purpose of our recording statute, the Washington Supreme Court, in *Tacoma Hotel, Inc. v. Morrison & Co.*, 193 Wash. 134, 140, 74 P.2d 1003 (1938), said,

> The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property unless the mortgagee or purchaser had actual knowledge of the transfer not filed of record.

Defendants argue that the recording statute is of no aid to plaintiffs because their predecessor Olson was not a bona fide purchaser for value. Defendants rely upon a line of cases, of which *Desimone v. Spence*, 51 Wn.2d 412, 318 P.2d

[3]The lis pendens statute, RCW 4.28.320, and its application cannot be considered. The facts presented to the trial court contain no reference to the filing of a lis pendens.

[4]For a discussion of other statues see Durfee & Fleming, *Res Judicata and Recording Acts: Does A Judgment Conclude Non-Parties of Whose Interest the Plaintiff Has No Notice?*, 28 Mich. L. Rev. 811 (1930). Many statutes either state or have been interpreted to have the effect of extinguishing an unrecorded interest of an unjoined party as effectively as though he had been made a party to the suit. H. Tiffany, *Real Property* § 1534, at 608 (3d ed. Jones 1939); *Wolfenberger v. Hubbard,* 184 Ind. 25, 110 N.E. 198 (1915); *Connely v. Rue,* 148 Ill. 207, 35 N.E. 824 (1893). *See Hager v. Astorg,* 145 Cal. 548, 79 P. 68 (1904).

959 (1957), is representative, to support the proposition that a judgment creditor purchasing at his own execution sale is not a bona fide purchaser within the meaning of the recording act because he does not give value—the consideration being only his preexisting debt. But the cases upon which defendants rely all involve a judgment creditor purchasing at an execution sale rather than a mortgagee purchasing at a mortgage foreclosure sale. Moreover, there is considerable support for a contrary view. *See* R. Patton, *Land Titles* § 17, at 92 (2d ed. 1957). This is because the consideration the purchaser pays includes something more than his preexisting debt, namely, the legal expenses of the proceeding. In the instant case, the defendants challenge Olson's status as a good faith purchaser on the basis he failed to give value. The only facts presented to the trial court on this question are found in the affidavit of Harry Olson and the request for admissions of fact, which state,

> [T]he King County Sheriff sold the premises to Harry H. Olson, Inc. as the highest bidder at public auction for the sum of $14,704.73, and issued said purchaser a certificate of sale. On April 2, 1965, the King County Superior Court confirmed the sale of the premises to Harry H. Olson, Inc.

On these admitted facts, we cannot say that the $14,704.73 paid for the premises represents a preexisting debt, the amount of the judgment, or was not cash consideration given at the time of the sale. Neither the amount of the original debt nor the amount of the judgment is included among the admitted facts presented to the trial court.

Even assuming arguendo that the amount of Olson's bid represents the amount of his judgment, we are not persuaded that the mortgagee at a foreclosure sale cannot qualify as a bona fide purchaser for value. In *Attebery v. O'Neil*, 42 Wash. 487, 85 P. 270 (1906), the court held that a mortgagee who purchased at his foreclosure sale was a bona fide purchaser for value as against unknown and unrecorded equitable interests, cutting off the children of the mortgagor's first wife. *See Lewis v. Kujawa*, 158 Wash. 607, 291 P. 1105 (1930). Public policy reasons dictate that the

recording statute should protect the foreclosing mortgagee as well as the purchaser at a foreclosure sale against unrecorded and unknown interests. This policy is well expressed in G. Osborne, *Mortgages* § 322,. at 673 (2d ed. 1970):

> Although there may be some argument as to the proper basis of the result, it seems highly desirable to protect both the foreclosing mortgagee as well as a purchaser on foreclosure sale against interests that are acquired but remain unrecorded prior to the beginning of a foreclosure action. That protection should extend at least far enough to cut off all such interests of which there was no actual notice before suit, or actual knowledge during the pendency of the litigation.

(Footnote omitted.) A mortgage properly recorded gives notice of its contents to parties acquiring interests subsequent to the filing and recording of the instrument. *Kendrick v. Davis*, 75 Wn.2d 456, 464, 452 P.2d 222 (1969). We stated in *Koch v. Swanson*, 4 Wn. App. 456, 459, 481 P.2d 915 (1971),

> one searching the index has a right to rely upon what the index and recorded document discloses and is not bound to search the record outside the chain of title of the property presently being conveyed.

(Citation omitted.)

Defendants make an additional argument on the basis of the rule that a judgment creditor purchasing at his own execution sale stands in the shoes of his judgment debtor and takes only his interest; because Martinson had, prior to the judicial sale, divested himself of the timber and minerals by a deed to Portland Timber which was valid between the parties, the purchaser at the sale (Olson) acquired only his debtor's (Martinson's) interest, which did not include the timber and minerals. Such an argument is untenable. The contention is premised on a rule which applies to a judgment creditor purchasing at his execution sale and not to a mortgage foreclosure sale. The title acquired by foreclosure relates back to the date of the acquisition of the lien or the date of the execution of the mort-

gage. It is stated in 55 Am. Jur. 2d *Mortgages* § 785 (1971), at page 698, "The purchaser takes the title of the mortgagor as of the time when the mortgage lien was created." *Massachusetts Bonding & Ins. Co. v. Knox,* 220 N.C. 725, 18 S.E.2d 436, 138 A.L.R. 1438 (1942).

■ Defendants next argue that the mortgagee should have complied with the provisions of RCW 4.28.150 and 4.28.160, providing for service by publication upon unknown parties claiming an interest in the real estate, need not be considered. It is an argument made for the first time on appeal. It would unduly lengthen this opinion to detail the defendants' additional arguments, except to note they essentially involve a collateral attack upon the decree of foreclosure, a procedure condemned in *Globe Constr. Co. v. Yost,* 169 Wash. 319, 13 P.2d 433 (1932), and discuss asserted defects in the foreclosure proceeding not presented to the trial court when considering the motion for summary judgment.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied July 27, 1976.

Review denied by Supreme Court December 21, 1976.