METROPOLITAN LIFE INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT, v. SANITARY AND IMPROVEMENT DISTRICT NO. 222 OF DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLANTS AND CROSS-APPELLEES.

281 N. W. 2d 922

Filed August 14, 1979.    No. 42265.

Walsh, Walentine & Miles, for appellants.

John Barton of Crossman, Barton & Norris and August Ross of Ross & Mason, for appellee.

Heard before KRIVOSHA, C. J., BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

WHITE, J.

This is an appeal from an action filed in the District Court for Douglas County by the appellee, hereafter Metropolitan, to have certain special assessments levied by the appellant, hereafter SID, declared null and void for the reason that the improvements necessitating the assessments were constructed on private, rather than public property.

A recitation of the historical relationship between Metropolitan and SID is necessary for an understanding of this case. In 1970, Edward E. Wilczewski and Sterling R. Flott approached the predecessor company of Banco Mortgage Company, hereafter Banco, concerning the financing of a project subsequently known as August Moon Apartments. Banco was correspondent for a number of life insurance companies, including Metropolitan, to whom it submitted a "mortgage loan submission" for August Moon on forms provided by Metropolitan. Ultimately, this led to a "mortgage loan commitment" by Metropolitan to Banco for $2,050,000 on Phase I of the project. Flott and Wilczewski purchased the Phase I land on December 10, 1970, and apparently assigned their interest to August Development Company. On January 7, 1971, August Development Company executed a mortgage on the property in favor of Banco. In

May 1971, August Development Company became the owner of the real property which subsequently became Phase II of the project. On July 27, 1971, Banco submitted to Metropolitan a mortgage loan submission on Phase II, a revised submission for Phase I, and a combined submission for Phases I and II. Metropolitan, on August 24, 1971, issued to Banco a mortgage loan commitment for both Phase I and II of $5,600,000. On September 8, 1971, Banco accepted the commitment. On October 4, 1971, a mortgage on both Phase I and Phase II and a mortgage note payable to Banco in the amount of $5,600,000 was executed by August Development Company, the earlier mortgage on Phase I, only, having been released.

Interim, or construction, financing was by United States National Bank of Omaha. Metropolitan funded the project, that is to say, purchased the mortgages from Banco, only when the project was complete. This funding took place in July 1972 for Phase I and in July 1973 for Phase II.

During the same period of time in which the financing negotiations detailed above were taking place, the developers, Flott and Wilczewski, also took the necessary steps to form SID 222 for the purpose of financing and constructing certain improvements, namely water systems, paving, and sewer sections. Pursuant to section 31-727 et seq., R. R. S. 1943, the developers executed the articles of association for the District on December 31, 1970. The petition for the formation of the District was filed with the clerk of the District Court for Douglas County on January 15, 1971, and a decree was entered by the court on the same day declaring the SID to be duly formed. That decree is not contested in this appeal. The District boundaries included all of the August Moon development. Its purpose, as stated in the articles of association, was: "* * * installing electric service lines and conduits, installing a sewer system,

installing a water system, and a system of sidewalks, public roads, streets, and highways; * * *." The board of trustees of SID 222 consisted of Flott, Wilczewski, their wives, and one Gerald Keating. In March 1971, the board passed resolutions of necessity to construct the streets, sewers, and water lines in Phase I. Bids were let, the improvements constructed, and payment made to the contractors with public funds raised by the sale of warrants to Dain, Kalman & Quail, Inc. The same procedure was followed in September and October 1971 for the improvements in Phase II.

Eventually, the August Moon project met with financial difficulties. Metropolitan filed a foreclosure proceeding in the District Court for Douglas County on March 5, 1975, and a sheriff's deed was issued to Metropolitan on August 28, 1977.

On January 27, 1975, the board of SID 222 passed a bond resolution for the issuance of $2,250,000 in bonds.

On August 25, 1975, the board levied the special assessments challenged here totaling $1,603,686.53 against the August Moon property for sewer, water, and concrete paving. The validity of the bonds is not contested. Metropolitan concedes that the bonds shall remain an obligation of the District, and the question is, then, whether they shall be repaid by special assessment or by general levy as provided in section 31-755, R. R. S. 1943.

Prior to 1961, the lien arising from a special assessment was, unlike general taxes, inferior to the lien of a prior first mortgage. See City of Lincoln v. Lincoln St. R. Co., 67 Neb. 469, 93 N. W. 766. But in 1961, the Legislature decreed that special assessment liens would henceforth be inferior only to general taxes. § 77-1917.01, R. R. S. 1943. There is no question, then, that the assessments challenged here, if validly levied, are as effective against the mortgage following foreclosure as they would have

been against the mortgagor. But Metropolitan contends that the assessments are not valid because the improvements were actually constructed on the private property of the developers.

It is beyond question that in order to render an assessment for improvements valid, the improvements may be constructed only on land in which the public has title or at least a valid easement. City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396. See, also, 14 McQuillan, Municipal Corporations (3d Ed.), § 38.179, p. 448.

The trial court found that written easements were given for sewers within the District. It held that the assessments for sewers and water systems were valid. The court further found that there were no written dedications of streets within the District and there was insufficient proof of intent on the part of the developers to dedicate that property, and rejected the SID's contention that the streets had been the subject of a valid "common law" dedication. Intent to dedicate, along with acceptance of the dedication by the proper public authorities or by general public use, are the essential elements of a valid common law dedication. 11 McQuillan, Municipal Corporations (3d Ed.), § 33.03, p. 634, at p. 635.

On an appeal from an equity trial, in determining the weight to be given the evidence, the Supreme Court will consider the fact that the trial court observed the witnesses and their manner of testifying. Sinnett v. Hie Food Products, Inc., 185 Neb. 221, 174 N. W. 2d 720. The evidence fully supports the judgment of the District Court as to the *intent* of the developers to dedicate the property; however, we think it necessary to decide initially whether they had the authority to do so.

"Fundamental to the law of real property is the rule that one may not convey or alienate a greater interest in land than he owns, and, consistently with this axiomatic principle, it is firmly established that

a mortgagor cannot, without the consent of the mortgagee, make a dedication of the mortgaged premises so as to adversely affect the interest of the mortgagee." Annotation, 63 A. L. R. 2d 1160. See, also, Morning v. City of Lincoln, 93 Neb. 364, 140 N. W. 638. The rule is controlling unless, as the SID argues, Metropolitan is for some reason estopped from denying a dedication. For purposes of our examination, we accept that Banco was acting as an agent for Metropolitan. The existence of an agency relationship is a fact question. The evidence presented by the SID on that issue was similar to and as strong as the evidence reviewed in Jensen v. Lewis Investment Co., 39 Neb. 371, 58 N. W. 100, where we held that a mortgage lender's correspondent was an agent for the lender, despite disclaimers to the contrary. Yet, having established the existence of the agency relationship, SID must still prove the existence of facts authorizing a finding of estoppel. On this account, the SID claims that David Beal, vice president of Banco, "solicited and induced" the developers to create the SID for the purpose of making the improvements, and that the improvements were made in good faith in reliance on Beal's representations. The trial court found otherwise. Beal did not testify. While it is probably true that he, or others at Banco, knew of the formation of the SID, there is no support for the "solicitation and inducement" theory. As far as the "reliance" argument, it appears that the developers formed the SID only after consultation with their own attorney. Before a person can sustain the plea of estoppel against another, he must have relied upon and been injured by the facts as pleaded. First Nat. Bank v. First Nat. Bank, 111 Neb. 441, 196 N. W. 691.

The courts are in agreement that in the absence of an estoppel, or the consent of the mortgagee to a dedication, a foreclosure sale revokes and nullifies an attempted dedication by a mortgagor. Metro-

politan has, for whatever reason, conceded the validity of the special assessment in the amount of $33,637.17 for the paving of a portion of 99th Street. All remaining special assessments are void.

Metropolitan is, by virtue of the foreclosure, the owner of the property particularly benefited by the improvements, and will be responsible for the discharge of the bonds by ad valorem taxes, instead of special assessments. Apparently other lawsuits are pending which seek to transfer the burden of these taxes to others. We specifically do not rule on the propriety of those actions.

The order of the District Court is affirmed in part and reversed in part.

AFFIRMED IN PART, AND IN PART REVERSED.