WESTERN FERTILIZER AND CORDAGE COMPANY, INC., APPELLANT, V. CITY OF ALLIANCE, A MUNICIPAL CORPORATION, APPELLEE.

504 N.W.2d 808

Filed August 27, 1993.    No. S-91-822.

Robert G. Simmons, Jr., of Simmons, Olsen, Ediger & Selzer, P.C., for appellant.

James R. Hancock, of Hancock & Denton, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

In this inverse condemnation action, Western Fertilizer and Cordage Company, Inc. (Western), brought suit against the City of Alliance (City), seeking damages resulting from utility easements and water, sewer, and street improvements made by the City on property purchased by Western at a foreclosure sale. The trial court sustained the City's motion for summary judgment, and the Nebraska Court of Appeals affirmed. Western petitioned for further review pursuant to Neb. Rev. Stat. § 24-1107 (Cum. Supp. 1992). We reverse the judgment of the Court of Appeals.

## FACTUAL BACKGROUND

Western was the mortgagee of 79.8 acres of land sold to BRG, Inc., in 1976 for $239,400. BRG, which planned to develop the land for residential use, authorized the City to improve the property. After BRG defaulted on the mortgage, Western filed suit against BRG and the City to foreclose on the mortgage and to determine the validity and priority of certain liens and assessments claimed by the City. The City cross-petitioned, claiming lien assessments totaling over $274,000. In an appeal from that action, this court determined that "Western did not sign or consent to the dedications, and, consequently, the assessments for improvements upon the land mortgaged to Western are not valid as against Western's mortgage, and are inferior thereto." *Western Fertilizer v. BRG*, 228 Neb. 776, 787, 424 N.W.2d 588, 595 (1988) (*Western I*). Western subsequently purchased the land for $50,000 at a sheriff's sale on October 4, 1988. Western later instituted the present inverse condemnation action.

The following is a chronology of events in the present action:

May 19, 1976—BRG purchased the property from Western for development purposes, with the final payment due October 1, 1977.

April 1977—The City passed two ordinances approving the plat of Homestead First Addition which contained a dedication of the streets, alleys, and public grounds therein to the use and

benefit of the public.

August 31, 1977—Western's president, Gordon Keeley, on behalf of Western, signed one dedication for part of the property.

September 29, 1977—Restrictive covenants, including certain utility easements, were established by Western and BRG and signed by Keeley.

October 1977—BRG gave Western a promissory note secured by a mortgage on the property in question. On the same day the mortgage was executed (October 26), the parties entered into an amended sales agreement which reflected changes (partial platting) with respect to development of the real estate.

November 1978 to October 1981—BRG signed several more dedications during this time period; Western's secretary-treasurer, Max Garwood, without authority to do so, signed the same dedications on behalf of Western. In addition, the City passed several ordinances approving plats and establishing sewer, water, and street improvement districts in the property.

Early 1983—After Garwood left Western, Keeley learned that Garwood had signed the additional dedications.

August 1983—Keeley complained to the City about the unauthorized dedications and informed the City that Western did not join in or consent to those dedications signed by Garwood. He also advised the City that BRG was in default on its debt to Western and that Western might be forced to foreclose its mortgage on BRG's land.

May 1985—Western initiated foreclosure proceedings. See *Western I.*

June 17, 1988—Issuance of decision and opinion in *Western I.*

October 1988—Western acquired the property at a foreclosure sale and received a sheriff's deed for the land.

August 23, 1990—Western filed its inverse condemnation action against the City.

In its petition in the inverse condemnation action, Western alleged that the City "had taken and damaged for public use all or parts of the lands" in question without just compensation and that in the event the court found that the City had not taken

all of the property in question, Western had nonetheless suffered incidental and consequential damages to the land not taken.

Both parties moved for summary judgment. In its motion, the City asserted that (1) the statute of limitations barred Western's action; (2) Western was estopped from claiming that the City had taken Western's property because Western had taken title to the property by lot and block numbers; (3) this court, in *Western I*, had held that the easements acquired by the City were valid but subordinate to Western's mortgage; (4) Western did not acquire a cause of action for condemnation damages when it purchased the property at the foreclosure sale; and (5) Western was estopped from denying the easements it did not specifically approve because it became bound to the plan of development when it accepted Homestead Addition and Homestead First Addition.

The district court granted summary judgment to the City, ruling that "[t]he fact that the defendant's assessment and lien are void against the priority of the plaintiff's lien does not mean they have 'taken' private property of the plaintiff without just compensation." The court found that Western had purchased the property in question with "actual notice of the defendant's interest in the land" and, thus, its interest could be no greater than that of BRG, which had authorized the City's claims to the property. Furthermore, the court found that "the defendant's easements and appropriations are open, visible, recorded of public record and make plaintiff's claimed ownership a servient estate to the defendant government's exercise of dominion over, appropriation, and interest in the real estate. *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 440 N.W.2d 456 (1989)."

Western appealed to the Nebraska Court of Appeals, which affirmed the trial court's decision in *Western Fertilizer v. City of Alliance*, 1 NCA 1517 (1992). Relying in large part on *Peterborough Savings Bank v. Pierce*, 54 Neb. 712, 75 N.W. 20 (1898), the Court of Appeals concluded that because "Western, as purchaser, had notice of the improvements on the property, [it acquired] no rights greater than BRG or Western, as mortgagee, against the City concerning these improvements." 1

NCA at 1520.

On the question of inverse condemnation, the Court of Appeals stated:

> The record shows that BRG gave permission for the City to make improvements on the property in question. BRG would not have had an action against the City for inverse condemnation because it gave the City permission to perform the improvements. Similarly, Western, as owner in lieu of BRG, does not have an action against the City for inverse condemnation.
>
> The judgment of the Nebraska Supreme Court in [*Western I*] established the priority of the interests as between Western and the City. Western, as mortgagee, had a security interest in the property and a right to protect that interest, which it did in the foreclosure action. The City's failure to acquire permission from Western, as mortgagee, for the improvements was not a "taking" of Western's interest in the property because Western did not have title or possession of the property at the time the improvements were consented to and made. Therefore, Western, as mortgagee, did not have rights against the City for inverse condemnation.

1 NCA at 1520.

Western petitioned this court for further review pursuant to § 24-1107, asserting that (1) the Court of Appeals had significantly changed Nebraska law that a purchaser at a foreclosure sale acquires every right and interest in the property of all the parties to the action and (2) the Court of Appeals' holding that the purchaser at a foreclosure sale acquires title subject to the rights of a junior lienholder who was a party to the foreclosure proceeding is contrary to both Neb. Rev. Stat. § 25-1533 (Reissue 1989) and prevailing case law.

Article I, § 21, of the Nebraska Constitution states, "The property of no person shall be taken or damaged for public use without just compensation therefor." Article I, § 21, of the Nebraska Constitution is self-executing, and therefore, a cause of action may be brought directly under that section. A litigant must simply " 'allege and prove facts constituting a cause of action' under the constitutional language." *Dishman v.*

*Nebraska Pub. Power Dist.*, 240 Neb. 452, 453, 482 N.W.2d 580, 582 (1992) (quoting *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985)). "[W]hen a political subdivision with the power of eminent domain damages property for a public use, the property owner may seek damages in an action for tort, in a statutory action for inverse condemnation, or in a constitutional action for inverse condemnation." *Dishman v. Nebraska Pub. Power Dist.*, 240 Neb. at 454, 482 N.W.2d at 582 (citing *Slusarski v. County of Platte*, 226 Neb. 889, 416 N.W.2d 213 (1987)). Therefore, the district court properly exercised jurisdiction over this inverse condemnation action.

## *WESTERN I*

In its answer to Western's petition, the City set forth a counterclaim in which it asked the court to set aside the judgment in the foreclosure action which is the subject of *Western I.* The City alleged that although Keeley, Western's president, testified that he was never asked to sign, nor did he sign, any plat or dedication on behalf of Western other than the plat signed on August 31, 1977, he did, in fact, sign on September 29, 1977, a document entitled "Restrictive Covenants," which was a dedication of street and utility easements upon which the City relied. The City argues that this nondisclosure was material to the decision in *Western I* and that, therefore, that judgment should be set aside.

The document to which the City refers provides that anyone taking title or possession of property within Homestead First Addition waives any claim against Western or BRG arising out of construction, maintenance, repair, renewal, replacement, or operation of utility easements. It was signed by Keeley before the mortgage was executed, was offered into evidence in the foreclosure action, and presumably was considered by the court. Thus, according to Western, the issue of its lack of approval of the dedications is res judicata.

The doctrine of res judicata

is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. . . .

Res judicata is founded on a policy favoring termination of an action by preclusion or prevention of subsequent litigation on the same cause.

*NC + Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 310-11, 422 N.W.2d 542, 545 (1988). In addition, " 'if the record of the former trial shows that the judgment could not have been rendered without deciding the particular matter, it will be considered as having settled that matter *as to all future actions between the parties . . . .*' " (Emphasis supplied.) *Norlanco, Inc. v. County of Madison*, 186 Neb. 100, 107, 181 N.W.2d 119, 123 (1970) (quoting 46 Am. Jur. 2d *Judgments* § 422 (1969)).

Of course, a court may modify or vacate a judgment pursuant to Neb. Rev. Stat. § 25-2001 (Reissue 1989) or its equitable powers. Although a court's authority to vacate or modify a judgment under § 25-2001 is not exclusive, *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988); *State ex rel. Birdine v. Fuller*, 216 Neb. 86, 341 N.W.2d 613 (1983); and *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983), a litigant seeking to proceed in equity must show that § 25-2001 is not applicable, because equitable relief does not lie where there is a remedy at law, *State ex rel. Birdine v. Fuller, supra*, and *Emry v. American Honda Motor Co., supra*. Section 25-2001(4) provides that a judgment may be modified or vacated if the judgment was the result of "fraud practiced by the successful party in obtaining the judgment or order." The City contends that Keeley's testimony in the foreclosure action regarding his supposed ignorance of the improvements being made to the property was "unbelievable" and that our decision in *Western I* was the result of Keeley's false testimony. Because the grounds on which the City asserts *Western I* should be vacated fall within § 25-2001(4), and the City failed to file a petition to vacate the judgment as required by Neb. Rev. Stat. § 25-2002 (Reissue 1989), we do not have the power to vacate the judgment in *Western I*.

The question of whether Keeley approved the dedications to the City was central to our decision in *Western I*. Therefore, under the doctrine of res judicata, we are bound by the factual findings in *Western I*, as discussed below.

## THE FORECLOSURE SALE FOR
## WESTERN'S MORTGAGE

In *Western I*, we affirmed the district court's order foreclosing Western's mortgage and ordering the sale of the real estate. The City claimed its lien for unpaid assessments was superior to Western's mortgage. We disagreed, noting that

> " '[f]undamental to the law of real property is the rule that one may not convey or alienate a greater interest in land than he owns, and, consistently with this axiomatic principle, it is firmly established that a mortgagor cannot, without the consent of the mortgagee, make a dedication of the mortgaged premises so as to adversely affect the interest of the mortgagee.' [Citations omitted.]"

228 Neb. at 782-83, 424 N.W.2d at 593 (quoting *Metropolitan Life Ins. Co. v. SID No. 222*, 204 Neb. 350, 281 N.W.2d 922 (1979)). Thus, in *Western I*, we held that because "Western did not sign or consent to the dedications . . . the assessments for improvements upon the land mortgaged to Western are not valid as against Western's mortgage, and are inferior thereto." 228 Neb. at 787, 424 N.W.2d at 595.

Western argues that because the City was a party to the foreclosure action, Western acquired all the rights and interests of the City when Western purchased the property at the foreclosure sale.

> The purpose of a foreclosure action is to satisfy, out of the proceeds of a sale of the estate in the mortgaged property as it stood at the time the mortgage was executed, the claim of the holder of the obligation when there is a default in the performance of the act it is given to secure.

4 American Law of Property § 16.186 at 446-47 (A. James Casner ed. 1952). As the result of a foreclosure sale of real estate given as security by the mortgagor, the rights of redemption of the mortgagor and junior lienholders who are joined in the action are extinguished, and upon confirmation of the sale, the purchaser obtains title to the " 'entire interest and estate of mortgagor and mortgagee as it existed at the date of the mortgage.' " *Id.* at § 16.195 at 469 (quoting *Rector, etc., of Christ P. E. Church v. Mack et al.*, 93 N.Y. 488, 45 Am. Rep. 260 (1883)). See, also, *Nystrom v. Buckhorn Homes, Inc.*, 778

P.2d 1115 (Alaska 1989); *Valentine v. Portland Timber*, 15 Wash. App. 124, 547 P.2d 912 (1976). Cf. 3 The American Law of Real Property §§ 25.05[1] and 25.11[1] (Arthur R. Gaudio ed. 1992) (mortgagor cannot transfer greater interest in the property than he has; senior lienholder is entitled to be paid in full before junior lienholder receives anything).

Furthermore, in *Metropolitan Life Ins. Co. v. SID No. 222, supra*, we held that "in the absence of an estoppel, or the consent of the mortgagee to a dedication, a foreclosure sale revokes and nullifies an attempted dedication by a mortgagor." 204 Neb. at 355, 281 N.W.2d at 925. Western cites additional Nebraska decisions in support of the preceding proposition, including *Hart v. Beardsley*, 67 Neb. 145, 93 N.W. 423 (1903), in which this court held that the purchaser at a foreclosure sale, who had acquired the property in reliance on the law and a court decree declaring his mortgage "superior and paramount," obtained every right, title, and interest of all the parties to the foreclosure action. See, also, *Nuttelman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988) (because the husband's rights and interest had passed to the purchaser upon confirmation of the judicial sale, any lien asserted by his wife was not a property right in or to the property, but merely a charge or security thereon); *Butts v. Hale*, 157 Neb. 334, 59 N.W.2d 583 (1953) (every interest and right held by a mortgagor, whenever acquired, pass with the mortgage at a foreclosure sale); *Clements v. Doak*, 140 Neb. 265, 299 N.W. 505 (1941) (a purchaser at a foreclosure sale buys at his peril, but acquires every right and interest of all parties to the action); *Criswell v. McKnight*, 120 Neb. 317, 232 N.W. 586 (1930) (a mortgagee which failed to protect itself against taxes could not complain about insufficiency after mortgage was satisfied); *Arterburn v. Beard*, 86 Neb. 733, 126 N.W. 379 (1910) (although all right, title, and interest of defendants in property passed to purchaser at a foreclosure sale, because purchaser had notice of an easement, he bought subject to that easement); *Kerr v. McCreary*, 84 Neb. 315, 120 N.W. 1117 (1909) (a purchaser at a foreclosure sale acquires the title of all parties to the action, but not the rights of nonparties); *Currier v. Teske*, 84 Neb. 60, 120 N.W. 1015 (1909) (the purchaser at a

foreclosure sale acquires the title only of those who were parties to the action); *Young v. Brand*, 15 Neb. 601, 19 N.W. 494 (1884) (whatever estate or title mortgagor held was merged in the decree and extinguished by the deed thereunder).

However, the City points out that this court has also held that the purchaser of real property at a judicial sale buys at his peril, *Hitchcock County v. Cole*, 80 Neb. 375, 114 N.W. 276 (1907), and that the deed obtained at such a sale conveys only the estate which would have been conveyed by a quitclaim deed from the execution debtor to the purchaser, *Peterborough Savings Bank v. Pierce*, 54 Neb. 712, 75 N.W. 20 (1898).

Moreover, the City argues that according to § 25-1533, a deed obtained at a judicial sale

> shall be sufficient evidence of the legality of such sale and the proceedings therein until the contrary be proved, and shall vest in the purchaser as good and as perfect an estate in the premises therein mentioned as was vested in the party at or after the time when such lands and tenements became liable to the satisfaction of the judgment.

According to the City's interpretation of § 25-1533, Western, as purchaser at a judicial sale, could obtain only that estate which was vested in BRG at or after the time of the foreclosure action. Although the language of § 25-1533 (the purchaser at a judicial sale takes only the interest that the owner had in the land) might appear to conflict with Nebraska case law (the purchaser at a foreclosure sale takes every right and interest of all parties to the foreclosure action), the language of § 25-1533 contemplates that only one party is "liable to the satisfaction of the judgment." In a foreclosure action in which junior lienholders are joined in the action against the mortgagor, they, in a sense, share in liability for the satisfaction of the judgment by being stripped of their interest in the property foreclosed upon. Thus, the rule providing that when a senior mortgagee purchases the mortgaged real estate at a foreclosure sale, the confirmed purchase and sheriff's deed extinguish the rights of junior lienholders who were parties to the action, does not conflict with § 25-1533. See *Valentine v. Portland Timber*, 15 Wash. App. 124, 547 P.2d 912 (1976). Cf. *Hart v. Beardsley*, 67 Neb. 145, 93 N.W. 423 (1903) (sections 499 and 853 of the Code of

Civil Procedure did not change the common-law rule that in the absence of any reservation in the decree, a foreclosure sale transfers every right, title, and interest of all parties to the suit).

Thus, in this case, the City's junior lien was extinguished when Western purchased the property at the foreclosure sale for less than the amount owed on its mortgage, see, *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.*, 192 Neb. 588, 223 N.W.2d 425 (1974), and *Hadley v. Schow*, 146 Neb. 163, 18 N.W.2d 923 (1945), and Western obtained on the date of the mortgage the entire estate belonging to BRG and the property described in the mortgage, less the one parcel whose dedication to the City Western had previously approved. That estate, described in "Exhibit A" of the mortgage, included the majority of "Lots 1 and 2, and the South Half of Northeast Quarter, Section 2, Township 24 North, Range 48, West of the 6th P.M." However, the sheriff's deed given to Western following the confirmation of the foreclosure sale described the property as "Lots 1 through 10 inclusive, Block 2 . . . ." Thus, although the land was described by metes and bounds in the mortgage, in the sheriff's deed the property was described by lots and blocks. Because the deed uses different terminology to describe the land than does the mortgage, and the record does not reconcile the different descriptions, a question of fact exists as to whether the two documents describe the identical estate.

## TAKING WESTERN'S PROPERTY

Because we have concluded that Western should have received the entire estate as described in the mortgage documents, we must determine whether, in the absence of that occurring, Western's property has been taken. The district court held that "[t]he fact that the defendant's assessment and lien are void against the priority of the plaintiff's lien does not mean they have 'taken' private property of the plaintiff without just compensation," because any failure to secure Western's consent to the dedications was paid for by the City's loss of its claimed lien in the foreclosure action. The court also found that Western had purchased the property in question with "actual notice of the defendant's interest in the land," and thus, Western's interest could be no greater than that of BRG, which

had authorized the City's claims to the property. The court held that Western's claimed ownership was servient to the City's easements and appropriations. However, *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 440 N.W.2d 456 (1989), which the court cited in support of its conclusion, is inapposite, because in *Kimco Addition*, the party claiming its property had been taken had no interest in the property whatsoever at the time the alleged taking occurred.

Relying in large part on *Peterborough Savings Bank v. Pierce*, 54 Neb. 712, 75 N.W. 20 (1898), the Court of Appeals affirmed the district court's decision and concluded that because "Western, as purchaser, had notice of the improvements on the property, [it acquired] no rights greater than BRG or Western, as mortgagee, against the City concerning these improvements" when it purchased the property at the foreclosure sale. *Western Fertilizer v. City of Alliance*, 1 NCA 1517, 1520 (1992).

The Court of Appeals clearly erred in concluding that no taking could have occurred when Western was mortgagee "because Western did not have title or possession of the property at the time the improvements were consented to and made." 1 NCA at 1520. In *Dodge v. O. & S. W. R. R. Co.*, 20 Neb. 276, 282, 29 N.W. 936, 939-40 (1886), this court noted that "[i]f mortgaged property can be literally destroyed . . . without notice to the mortgagee, or any compensation to him, then the [takings clause] of the constitution . . . would be without practical force, and would remain only in theory." Although no Nebraska cases discuss this precise issue, several other jurisdictions have held that a mortgagee's lien on real estate is an interest that may be subjected to a taking for a public purpose and, therefore, may be the subject of an eminent domain proceeding. See, for example, *Matter of the Petition of Dillman*, 276 Mich. 252, 258, 267 N.W. 623, 625 (1936) ("[u]nder any circumstances, a mortgagee has sufficient right to the [condemnation] award to preserve his security against evident or established impairment"); *Board of Directors v. Whiteside*, 87 F. Supp. 69, 71 (W.D. Ark. 1949) ("[i]n condemnation cases the mortgagee cannot be deprived of its lien by such proceedings without notice and, in order for the

plaintiff to acquire title to the property sought to be condemned, it was necessary that the mortgagee be made a party"); *Bourjaily v. Johnson County*, 167 N.W.2d 630, 634 (Iowa 1969) ("[i]t is clear the contract vendors and the mortgagee have interests in the property which will be directly and materially affected by the condemnation of the land in question"); *Maxey v. Redevelopment Authority of Racine*, 94 Wis. 2d 375, 400-01, 288 N.W.2d 794, 806 (1980) ("a mortgagee's lien extends to any compensation made for the condemnation of mortgaged property").

Thus, it does not matter that Western had neither title nor possession of the property at the time the alleged taking occurred if its interest in the property was adversely affected by the City's actions. Whether Western's interest in the property was affected depends upon whether the property described by the sheriff's deed received by Western at the foreclosure sale differs from the property described in the mortgage which Western obtained from BRG. If the property as described by the sheriff's deed differs from the property described in the mortgage, then the property was taken prior to Western's purchase of the land at the foreclosure sale, and the City must pay compensation, unless, as the City asserts, the statute of limitations bars this action.

## STATUTE OF LIMITATIONS

Neither the district court nor the Court of Appeals addressed the City's assertion that the statute of limitations barred Western's action. The City acquired its interest in the property as a result of BRG's dedications, which granted the City easements for a variety of purposes. The City then passed ordinances levying assessments on the property. Those ordinances were matters of public record, and notices thereof were published in The Alliance Daily Times-Herald on various dates between November 1978 and October 1981. The City argues that Western's cause of action accrued when those dedications were made and the ordinances passed and that, therefore, this action is barred by the statute of limitations. Furthermore, the City asserts that because extensive development had already occurred in 1979-80, Western had

notice of any infringement of its interest in the property by 1980. Western argues that the statute of limitations did not begin to run until it received the sheriff's deed in October 1988. Western asserts that until that time, the City's use of the property was permissive.

The statute of limitations in an inverse condemnation proceeding is 10 years. Neb. Rev. Stat. § 25-202 (Reissue 1989). See, also, *Krambeck v. City of Gretna*, 198 Neb. 608, 254 N.W.2d 691 (1977). However, according to *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 294, 440 N.W.2d 456, 460-61 (1989), "if the use begins as a permissive one, it retains that character until notice that the use is claimed as a matter of right is communicated to the owner of the servient estate. This rule is not affected by transfer of either the licensee's or licensor's title." Moreover, "[t]he use and possession of property with the permission of the owner can never ripen into title by adverse possession without some change in the nature of the possession being brought home to the true owner." *Young v. Lacy*, 221 Neb. 511, 515, 378 N.W.2d 192, 195 (1985).

> Inverse condemnation is analogous to an action by a private landowner against another private individual or entity to recover the title to or possession of property. While the property owner cannot compel the return of the property taken, because of the eminent domain power of the condemner, he has a constitutional right, as a substitute, to just compensation for what was taken.

*Krambeck v. City of Gretna*, 198 Neb. at 614, 254 N.W.2d at 695. Accord *Kimco Addition v. Lower Platte South N.R.D., supra*. Therefore, if the City's use of the land began as a permissive use, it cannot now claim title under a theory of adverse possession or the analogous action of inverse condemnation. Thus, in order to determine whether the statute of limitations has run in this case, we must determine (1) whether the use began as a permissive use and (2) when Western received notice that the City claimed use as a matter of right.

In *Simacek v. York County Rural P.P. Dist.*, 220 Neb. 484, 370 N.W.2d 709 (1985), property owners sought the removal of high-voltage powerlines from property that reverted to them

after being abandoned by a railroad. The power district, which had erected the lines with the permission of the railroad which possessed a right-of-way over the land, claimed that it had obtained a prescriptive easement across the land. Although the railroad had title to the land at the time the lines were erected, the deed to the railroad, which had been granted over 70 years previously, provided that if the right-of-way was ever abandoned, it would revert to the grantor. This court found that because the railroad had possession of the land at the time it entered into the agreement with the power district and because the power district had relied on the railroad's representations that it had authority to permit the construction of the lines, the power company's use of the property was permissive until such time as the railroad abandoned the right-of-way. Therefore, the power district had not acquired a prescriptive easement across the right-of-way.

Similarly, in the present case, at the time BRG made the dedications and the City passed the ordinances, BRG was the record owner of the property and was in possession of the land. Thus, Western contends that as in *Simacek*, the City's use of the property was permissive until Western acquired the property at the sheriff's sale. However, our decision in *Simacek* was based on the premise that the power district's use of the land was " 'in complete subservience to the exclusive right of the "Railway Company" prior to the abandonment of the railroad. . . .' " 220 Neb. at 488, 370 N.W.2d at 712 (quoting *Taylor Investment Co. v. Kansas City Power & Light Co.*, 182 Kan. 511, 322 P.2d 817 (1958). That is not the case here. As reflected in the ordinances it passed, the City clearly believed that, as a result of the dedications made by BRG, the City had exclusive and permanent dominion over portions of the land in question.

The Iowa Supreme Court addressed a similar situation in *Scott v. City of Sioux City*, 432 N.W.2d 144 (Iowa 1988), when property owners sued the city for inverse condemnation following the enactment of restrictive zoning regulations. The city argued that because the ordinances had been passed more than 10 years before the action was commenced, the suit was barred by the 5-year statute of limitations. The plaintiffs contended that the ordinance was a continuing violation that

tolled the statute of limitations and that no damages could have been assessed until the plaintiffs purchased an alternate site for their shopping center. The Iowa Supreme Court held for the city, stating that "the passage of the permanent ordinance had immediate adverse economic consequences for plaintiffs. The regulation's impact on the development potential and market value of the property was immediate, and constituted a single injury." 432 N.W.2d at 148.

Similarly, BRG's dedications and passage of the city ordinances had an immediate impact on Western's interest in the property. Western seems to have recognized this, because in August 1983, after Western's president, Keeley, learned that unauthorized dedications had been made, he complained to the City about those dedications and informed the City that Western did not join in or consent to those dedications. Therefore, although the City's interest in the property was obtained with BRG's approval, it was never permissive with respect to Western.

Furthermore, Western had notice of the City's claim to the land well before it obtained the land at the sheriff's sale. In *Polanski v. Eagle Point*, 30 Wis. 2d 507, 141 N.W.2d 281 (1966), the Wisconsin Supreme Court held that a town's possession of land under a deed was adverse from the time of the execution of the deed in 1944, and not from 1964, when the heirs or benefactors of the grantor's estate demanded reconveyance of the property and were refused. Although the plaintiff argued that the town's possession was not adverse until the plaintiff had sought reconveyance of the property, the court disagreed, holding that a grantee's possession is adverse to all the world from the time of the execution of the deed and that there was "no better evidence of the town's intention to assert its claim of title against all the world than the recording of the deed." 30 Wis. 2d at 513, 141 N.W.2d at 284. Moreover, the court noted that the purpose of the statute of limitations was " 'not reward to the diligent trespasser,' " but, rather, to penalize " 'the negligent and dormant owner, who allows another for many years to exercise acts of possession over his property.' " *Id*. (quoting *McCann and others vs. Welch and another*, 106 Wis. 142, 81 N.W. 996 (1900)). Because over 10

years had passed between the execution of the deed and the plaintiff's attempt to regain the property, the statute of limitations barred the plaintiff's action.

Neb. Rev. Stat. § 17-416 (Reissue 1991) provides, in pertinent part, that when a plat is properly "executed and acknowledged, the plat shall be filed for record and recorded in the office of the register of deeds and county assessor of the proper county." Neb. Rev. Stat. § 17-417 (Reissue 1991) provides in part that "[t]he acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use." Because Nebraska law provides that a properly executed and recorded plat is equivalent to a deed, under the reasoning in *Polanski v. Eagle Point*, Western received notice of the City's claim when the plats were recorded, and not when construction of the improvements began. The record in this case is silent, however, as to if and when the plats were recorded. Furthermore, the City's ordinances, if validly passed, were matters of public record with notice thereof published in The Alliance Daily Times-Herald and provided Western with constructive, if not actual, knowledge of the City's interest in the property by 1981.

However, the fact that the City claimed an interest in the property may not be sufficient to start the statutory period running if the City did not put the property to public use. Neb. Rev. Stat. § 76-714 (Reissue 1990) provides:

> The interest in the property acquired by the condemner shall be such title, easement, right-of-way, or use as is expressly specified in or necessarily contemplated by the law granting to the condemner the right to exercise the power of eminent domain. *The condemner shall not dispossess the condemnee until the condemner is ready to devote the property to a public use, and such title or interest as the condemner seeks to acquire shall not be complete until the property is put to the public use for which taken.*

(Emphasis supplied.) Thus, under § 76-714, the City could not complete its interest until the property was put to the public use for which it was taken. This occurred when the City exercised

dominion over or appropriated an interest in the property. See *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989). Therefore, the statutory period would have started running only when the City exercised dominion over or obtained an interest in the property.

In *Village of Maxwell v. Booth*, 161 Neb. 300, 306, 73 N.W.2d 177, 182 (1955), this court noted that " 'official acceptance [of a dedication] may consist in any positive conduct of the proper public officers evincing their consent on behalf of the public.' " (Quoting 16 Am. Jur. *Dedication* § 33 (1938).) Thus, passage of an ordinance or resolution may be sufficient to indicate acceptance even when actual control over the property is not exercised at that time. However, more recent cases have indicated that something more may be required to show acceptance of a dedication. See, *County of Banner v. Young*, 184 Neb. 546, 552, 169 N.W.2d 280, 284 (1969) (in order to prove the acceptance of a dedication of land for highway purposes, the county was required to show that a road was actually opened or used: "Until it is opened or used by the public it is not finally established"); *Aro Inv. Co. v. City of Omaha*, 179 Neb. 569, 575, 139 N.W.2d 349, 352 (1966) (although no formal declaration is necessary, there is no public use until such time as there is "use or some other act" indicating the city's acceptance of the dedication and intent to use the dedicated land).

In the present case, the City passed ordinances regarding the dedications, apparently published those ordinances, and began construction of the improvements pursuant to the ordinances. However, the record is silent as to when actual construction began or was completed. Thus, we are unable to determine when the City exercised physical control over the property. Moreover, the various dedications and ordinances apply to different parts of the property in question and provide the City with easements for a variety of purposes. Because some of the dedications and ordinances occurred more than 10 years before this action was filed, even if passage of the ordinances established the City's dominion over the land, the statute of limitations has run on some portions of this action. However, some of the later dedications and ordinances may also have

effected a taking and may not be time-barred. Thus, the date of any taking is a factual question which should have been determined by the trial court.

## CONCLUSION

The Court of Appeals erroneously held that no taking can occur if the mortgagee has neither title nor possession of the property at the time the mortgaged property is put to public use. In addition, because the question of when the appropriations actually occurred is a genuine issue of material fact not determined by the trial court, summary judgment was inappropriate. Therefore, we reverse the decision of the Nebraska Court of Appeals and remand this cause to the Court of Appeals with directions to reverse the district court's summary judgment for the City and to remand this cause to the district court for further proceedings.

REVERSED AND REMANDED WITH DIRECTIONS.